William F. JORDAN and William A. Rogers, on behalf of themselves and all others similarly situated, and the State of Minnesota, Plaintiffs,

v.

MONTGOMERY WARD AND CO., Incorporated, Defendant.

No. 4–70–Civ. 145.

United States District Court, D. Minnesota, Fourth Division.

Sept. 9, 1970.

Donald C. Savelkoul, Sigal & Savelkoul, Minneapolis, Minn., for plaintiffs.

Kenneth W. Green, O'Connor, Green, Thomas, Walters & Kelly, Minneapolis, Minn., for defendant.

John R. Kenefick, Asst. Sol. Gen., St. Paul, Minn., for the State.

## MEMORANDUM

LARSON, District Judge.

Plaintiffs brought a class action against defendant in two counts. Count I alleged violations of Title I of the Consumer Credit Protection Act, popularly known as "Truth in Lending." Count II alleged violations of Minnesota Statutes, Chapter 334, which pertain to the maximum rate of interest which can legally be charged on a credit transaction.

Plaintiffs later moved to amend the complaint so as to change the class in Count I from all catalog customers in the United States to only catalog customers residing in the State of Minnesota.

Defendant moved for and was granted an extension of time to answer. Defendant then interposed a motion to dismiss Count II and those portions of Count I dealing with credit advertising violations, pursuant to Rules 12(b) (1), 12(b) (6), 12(f), and 23 of the Federal Rules of Civil Procedure, and for a more definite statement of the allegations contained in the complaint, pursuant to Rule 12(e).

The Attorney General for the State of Minnesota then sought to intervene in the Count II proceedings pursuant to Rule 24(b). The motions were consolidated for hearing on August 20, 1970.

## MOTION TO STRIKE COUNT II OF COMPLAINT

■ Where both a Federal and a non-Federal grounds for recovery arise out of the same set of operative facts, the Federal Court has jurisdiction over both claims even if there is no separate jurisdictional basis for the non-Federal claim. Siler v. Louisville & Nashville R. Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909); Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). This is the so-called doctrine of pendent jurisdiction. The plaintiffs, having conceded that there is no separate jurisdictional basis for Count II of the complaint, are relying upon the Court to exercise pendent jurisdiction over Count II in order to try the allegations contained therein in a Federal Court.

■■ In order for the Court to exercise pendent jurisdiction there must be a substantial Federal question before the Court and the non-Federal claim must arise from the same nucleus of facts. Hurn v. Oursler, supra. In the instant case there is clearly a substantial Federal question. The plaintiffs are suing under a statutory provision which establishes a private right of action in Federal District Court. 15 U.S.C.A. § 1640(a) and (e). Notwithstanding the statutory right present here, it is clear that the mere question whether a Federal statute affords private remedies is sufficient to support pendent jurisdiction over a non-Federal claim. Taussig v. Wellington

Fund, Inc., 313 F.2d 472 (3rd Cir. 1963), cert. den. 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031 (1963).

■■ Whether or not the disclosure violations arise out of the same operative facts is a more difficult question in this case. Claims are ordinarily sufficiently related for purposes of pendent jurisdiction if they derive from a common nucleus of fact and would ordinarily be tried in one judicial proceeding. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In this case we have a violation of Federal law which arises out of a failure to disclose certain matters on a printed form. The State cause, although it arises out of the same credit transaction, deals with the imposition of a finance charge independent of any disclosure provisions. The proofs on each alleged violation are mutually exclusive. There is authority to the effect that one test of the appropriateness of assuming pendent jurisdiction is whether or not substantially the same evidence will prove both the Federal and non-Federal claim. Wagner v. World Wide Automobiles Corp., 201 F.Supp. 22 (D.C.N.Y. 1961). It may be argued that United Mine Workers of America v. Gibbs, *supra*, modified the *Wagner* standard by its implication that it was an unnecessarily grudging approach to limit pendent jurisdiction to those situations in which the claims are merely different labels that characterize substantially identical sets of circumstances. United Mine Workers of America v. Gibbs, *supra*, 383 U.S. at 724, 725, 86 S.Ct. 1130. However, the doubt in the present case, coupled with some additional circumstances related later, compels this Court in its sound discretion to refuse to exercise pendent jurisdiction over Count II of the complaint. United Mine Workers of America v. Gibbs, *supra*, at 726, 86 S.Ct. 1130; Massachusetts Universalist Convention v. Hildreth and Rogers Co., 183 F.2d 497 (1st Cir. 1950); Moynahan v. Pari-Mutuel Employees Guild, 317 F.2d 209 (9th Cir. 1963).

Count II is a matter of first impression in Minnesota and the determination is not critical to disposition of the Federal issue such as would be the case if service of process depended upon the retroactivity of a long arm statute. See Majerus v. Walk, 275 F.Supp. 952 (D. Minn.1967). In addition, the application of Minnesota's usury law to finance charges is presently before the State courts in two separate actions. There is no reason under these circumstances for this Court to entertain Count II of plaintiffs' complaint.

### INTERVENTION IN THE SUIT BY THE ATTORNEY GENERAL FOR THE STATE OF MINNESOTA

■ The Attorney General for the State of Minnesota admits that any standing to intervene depends upon this Court assuming pendent jurisdiction over Count II of the plaintiffs' complaint. The State does not have a separate basis of jurisdiction in this matter. Since jurisdiction over Count II has been denied, the motion by the Attorney General to intervene must also be denied.

### MOTION TO STRIKE PORTIONS OF THE COMPLAINT ALLEGING VIOLATION OF CREDIT ADVERTISING PROVISIONS OF THE TRUTH IN LENDING ACT

■ Provisions relating to disclosure of charges imposed in connection with sales on credit and provisions dealing with the advertising of credit terms are treated separately in the Truth in Lending Act. The former are contained in Chapter 2, sections 121 through 131 (15 U.S.C.A. 1631–41 1970 Supp.), while the latter are in Chapter 3, sections 141–145 (15 U.S.C.A. 1661–65 1970 Supp.).

The only provision creating a private right of action for violations of the Act appears in Chapter 2, section 130 (15 U.S.C.A. § 1640 1970 Supp.). This section provides for civil liability for any creditor who "in connection with any consumer *credit transaction*" fails to disclose the "information required under

this *chapter*." [1] (Emphasis added.) It is noteworthy that Chapter 2 is entitled "Credit Transactions" while Chapter 3 is entitled "Credit Advertising." This implies strongly that the phrase "this chapter" refers to Chapter 2 (Part B in U.S.C.A.; see note 1, *supra*) and does not create a right of action for a violation of Chapter 3 (Part C in U.S.C.A.; see note 1, *supra*). This conclusion is strengthened by examining other provisions of the Act and its legislative history.

Section 108(c) (15 U.S.C.A. § 1607(c)) vests overall enforcement authority in the Federal Trade Commission with respect to all creditors whose supervision is not specifically committed to other agencies. Most retail merchants, including the defendant in this action, fall within this residual category. A grant of a general nature such as this one alerts this Court to the fact that unless otherwise clearly indicated the remedies for violations of the Act were intended by Congress to be administrative in nature.

The legislative history of the Act lends further credence to defendant's position. The original enactment by the Senate contained no references at all to credit advertising. The House version originally contained a credit advertising provision but mentioned nothing about credit advertising violations, although it did provide civil penalties for wrongful disclosures concerning credit transactions. Later House versions of the bill specifically excluded the credit advertising provisions from application of the civil remedies provision. The final House version was the one adopted by Congress and, as already mentioned, provides separate chapters for "Credit Transactions" and "Credit Advertising" with the private right of action contained in the former. The House report accompanying the Act states:

"[T]he bill specifically exempts credit advertising from the application of civil penalties. This exemption has been written into the bill by your committee to avoid the possibility that anyone, not a party to an actual transaction, seeing an advertisement not complying with the disclosure requirements of the bill would attempt to seek civil penalties." H.R. 1040, 1968 USCCAN p. 1976.

It is apparent from the foregoing that Chapter 2, section 130, of the Act was not intended as a grant of jurisdiction to this Court for purposes of granting relief for violations of the "Credit Advertising" provisions of the Act. The defendant's motion to strike those portions of the complaint alleging Chapter 3 violations must therefore be granted.

## CLASS ACTIONS AND PLAINTIFFS' MOTION TO AMEND THE COMPLAINT

Since Count II of the complaint has been dismissed, the only Rule 23 question remaining is the class action in Count I. The Court is requesting additional briefs from the parties on this matter. The briefs will be directed to the questions outlined in the Order accompanying this memorandum. Action on the plaintiffs' proposed amendment, which deals with the redefinition of the class in Count I, will obviously have to be delayed until the class action issue is decided.

---

1. 15 U.S.C.A. § 1640 substitutes "part" for "chapter" in this phrase. That is because Chapters 1, 2, and 3 of the Act have been redesignated as parts A, B, and C, respectively, in U.S.C.A.