Frank A. GARZA, for himself and, as a member and representative of the class described in the complaint, on behalf of all members of the class described in the complaint, Plaintiff,

v.

CHICAGO HEALTH CLUBS, INC., a corporation, et al., Defendants.

No. 71 C 643.

United States District Court,
N. D. Illinois, E. D.

Sept. 15, 1972.

See also D.C., 329 F.Supp. 936.

Albert Koretzky, Chicago, Ill., for plaintiff.

Michael L. Sklar, Barry A. Pitler, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McLAREN, District Judge.

The complaint in this class action alleges violations of the Consumer Credit Protection Act, popularly known as the "Truth in Lending Act" (hereinafter

"TIL"), 15 U.S.C. § 1601 *et seq.*; Regulation Z, promulgated by the Federal Reserve Board under TIL, 12 C.F.R. § 226.1 *et seq.*; and the Illinois Retail Installment Sales Act (hereinafter "RISA"), Ill.Rev.Stat. ch. 121½, § 501 *et seq.*

### I.

Defendant Chicago Health Clubs (hereinafter "CHC") moves to dismiss and strike certain parts of the Second Amended Complaint. CHC's contentions will be dealt with here in the order in which they are raised in its motion.

Paragraph 7(d) of Count I of the complaint alleges that the contract signed by plaintiff Garza violates TIL and Regulation Z by failing to properly disclose that the entire balance would become due immediately on default without demand or notice and without providing for a partial refund of the finance charge in that event. CHC denies that such disclosure is required. Plaintiff's position is that the acceleration of the balance on default is a "prepayment" within Regulation Z § 226.8(b)(6) and (7). This term is not defined in the Regulation and has not been judicially interpreted. CHC argues that the word should be read only to include *voluntary* prepayment by the debtor before maturity.

■■ It is well recognized that, in the absence of specific technical meaning or legislative definition, words used in statutes and regulations should be accorded their ordinary meaning. See, *e. g.*, Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); United States v. L. R. Foy Construction Co., 300 F.2d 207, 210 (10th Cir. 1962). The ordinary meaning of "prepayment" favors CHC's interpretation. The fact that § 226.8(b)(4) deals separately with "charges payable in the event of late payment" also shows that the drafters of the Regulation saw a difference between default and prepayment. The Court concludes that § 226.8(b)(6) relates to prepayment in its ordinary sense, and that part of paragraph 7(d)

which erroneously relies on that section in alleging a failure to provide for a partial refund of the finance charge on acceleration is therefore dismissed.

■ The first part of paragraph 7(d), which alleges that the acceleration clause was not properly disclosed, nevertheless states a claim upon which relief may be granted. The fact that plaintiff has postulated a faulty theory in support of the claim does not justify dismissal if there are grounds for relief on another theory. See, *e. g.*, Nord v. McIlroy, 296 F.2d 12, 14 (9th Cir. 1961); Huey v. Barloga, 277 F.Supp. 864, 872 (N.D.Ill. 1967). TIL § 128(a)(9), 15 U.S.C. § 1638(a)(9), and Regulation Z § 226.8(b)(4) require the proper disclosure of "charges payable in the event of late payments."

■ The word "charges" is not defined in the statute or regulations and has not been interpreted in this context by the courts. Black's Law Dictionary 294 (4th ed. 1951) treats "charges" as a synonym for "obligation" and "claim." The courts have defined the word as meaning a pecuniary burden or expense, Sunderland v. Day, 12 Ill.2d 50, 145 N.E. 2d 39, 40 (1957), and " 'expenses which have been incurred, or disbursements made, in connection with a contract. . . .' " Weiner v. Swales, 217 Md. 123, 141 A.2d 749, 750 (1958). Considering these definitions and the purpose of the statute and regulation to inform consumers of credit costs and terms so they can effectively choose between sources of credit (TIL § 102, 15 U.S.C. § 1601), it seems clear that the acceleration of the balance of the debt should be considered a "charge" and that the allegations in the first part of paragraph 7(d) are therefore sufficient.

■ Paragraph 7(f) of Count I alleges that CHC's contract violates TIL and Regulation Z by failing adequately to describe and identify the security interest created by the confession of judgment clause. CHC moves to dismiss on the grounds that the clause itself is the

security interest. The clause[1] clearly identifies the property to which it relates as required by TIL § 128(a)(10), 15 U.S.C. § 1638(a)(10). It is placed on the same side of the contract as the signature and above it, in compliance with Regulation Z § 226.8(a)(1). The only remaining basis for the claim in paragraph 7(f) is that the confession of judgment clause does not adequately disclose a "description" of the security interest, as required by TIL § 128(a)(10) and Regulation Z § 226.8(b)(5). The initial question is whether this claim presents an issue of law or fact. The legislative history of TIL is of little help in this regard. However, the Congressional debates on the bills which preceded TIL disclose a general intent that the Federal Reserve Board regulations be specific enough to allow the lending industry to understand and meet the act's requirements. Since § 226.8(b)(5) does not define "description," we must assume that the Board saw it as presenting no serious ambiguity or technical difficulty.

Although "description" could be read as requiring some sort of heading or label, the clause itself explains the consequences of confession of judgment on default. It tells the debtor that a judgment will result in levy and execution on his personal property. Although the clause is written in somewhat legalistic terms, the language is not so confusing that a debtor can not understand it. Recognizing that such a clause, differently worded, might present a question of fact, this is not the case here. The Court therefore holds that the security interest in this case is adequately described and grants CHC's motion to dismiss paragraph 7(f).

Paragraph 7(h) of Count I alleges that CHC's contract violates TIL and Regulation Z by failing to describe the security interest acquired by the confession clause in meaningful sequence by placing the same adjacent to or near other disclosures concerned with default. CHC asserts that this states no claim because the acceleration on default need not be disclosed under the requirements of the act and regulations; thus the confession clause need not be in meaningful sequence with it.

■■ CHC's argument fails for two reasons. First, as shown above, the acceleration clause does fall within the disclosure requirements. Also, there are other charges disclosed in the contract concerning default which are covered by the requirements, to which Regulation Z § 226.6(a) requires that the confession clause be in meaningful sequence. The motion to dismiss paragraph 7(h) is therefore denied.

■ CHC also moves to dismiss the words "and were otherwise guilty of violating said statute and regulation" from the end of paragraph 7. This conclusory language of course gives CHC no idea of what other violations plaintiff may attempt to prove. The words will therefore be stricken with leave to amend so that plaintiff may specify such other basis he has, if any, for claiming violations of TIL and Regulation Z.

■ CHC's motion asserts several grounds for dismissing Count II, which is based on alleged violations of the Illinois Retail Installment Sales Act for failure to meet the requirements of pendent jurisdiction. In United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court established the familiar requirement of a "common nucleus of operative fact." This is the test of a federal court's *power* to hear a state claim. This test is clearly satisfied here owing to the fact that both the federal and state claims are based on the alleged inadequacy of disclosure of the same terms in the same contract.

---

1. ". . . and to consent to immediate execution upon any such judgment and that any execution that may be issued on any such judgment may be immediately levied upon and satisfied out of any personal property of the undersigned . . . and to waive all right of the undersigned . . . to have personal property last taken and levied upon to satisfy any such execution. . . . "

The grounds for dismissal of Count II asserted by CHC go to whether the Court should, in its discretion, decide not to exercise pendent jurisdiction in this case. The Supreme Court in *Gibbs* set out several factors to be considered in deciding whether to exercise pendent jurisdiction: judicial economy, convenience and fairness to the parties, the avoidance of needless decisions of state law, and the avoidance of jury confusion. *Id.* at 726–27, 86 S.Ct. 1130. The exercise of pendent jurisdiction here would result in judicial economy, and CHC has not shown how inconvenience or unfairness would result. The decision of the RISA claims cannot be termed "needless"; plaintiff has alleged substantial violations of the act. CHC asserts that pendent jurisdiction should not be exercised because the trial of the state claims will involve some evidence unnecessary to the federal claims due to differences in the disclosure requirements and defenses. Nevertheless, the great similarity of the sections of RISA and Regulation Z sections alleged to have been violated will result in many common questions of fact. Thus, Jordan v. Montgomery Ward and Co., 317 F.Supp. 948 (D.Minn. 1970), relied on by CHC, is inapposite. The state claims dismissed there required proof "mutually exclusive" of the TIL claims. *Id.* at 950. The Supreme Court in *Gibbs* recognized that a strong factor in favor of the exercise of pendent jurisdiction is a close relation of the state claims to questions of federal policy. This factor is present here due to the similarity of the purposes of the federal and state disclosure requirements and the fact that Illinois lenders must comply with both of them. That the RISA sections involved here have not yet been interpreted by the Illinois courts in any published opinion causes some hesitancy, but the obvious adoption of Regulation Z standards by the state is convincing evidence that similar interpretations of common language will not contravene the intendment of the state act.

The Court will therefore exercise pendent jurisdiction over the RISA claims in Count II. If it later becomes apparent that this results in jury confusion or other unfairness to the parties, these claims may be dismissed. United Mine Workers of America v. Gibbs, 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

CHC also moves to dismiss paragraphs 7(a) and 7(b) of Count II. Paragraph 7(a) alleges that CHC's contract violates RISA by failing to place information as to default charges on the same side of the contract and near the place for signature. CHC asserts that this claim must be dismissed because RISA, unlike Regulation Z, has no specific requirements as to the placement of required disclosures. CHC's contention appears to be well founded, and paragraph 7(a) is therefore dismissed.

Paragraph 7(b) states that the contract violates RISA by failing to make the default disclosures "clearly, conspicuously, and in meaningful sequence" by placing them near the disclosures as to due dates. CHC's motion again relies on the fact that RISA does not specify where the disclosures must be placed. The RISA § 505 requirement that disclosures be made "clearly, conspicuously, and in meaningful sequence," has not been judicially interpreted. The question posed by the motion to dismiss is whether the allegation that the default disclosures were not placed near the due date disclosures is encompassed by the § 505 test of liability. *See* Gremillion v. Rinaudo, 325 F.Supp. 375, 377 (E.D. La. 1971). The Court holds that it is. The statutory purpose of giving the debtor effective notice of the terms and costs of credit is best served if the requirement that disclosures be in "meaningful sequence" is read to mean that those disclosures which are logically related must be grouped together rather than scattered through the contract. There is such a relationship between the dates on which payment is due and the consequences of failing to make payment at those times. The motion to dismiss paragraph 7(b) is therefore denied.

CHC also moves to dismiss paragraph 7(c) of Count II. Paragraph 7(c) is identical to paragraph 7(d) of Count I. As in the motion to dismiss 7(d), CHC asserts that the acceleration clause is not covered by the disclosure requirements. Plaintiff's theory behind 7(c) is the same as for 7(d), that acceleration is "prepayment" covered by RISA § 505(14) and (15) which are substantially identical to Regulation Z § 226.8(b)(6) and (7) dealt with above. The state act's adoption of Regulation Z standards suggests that the same interpretations be given to the same term. Thus, the Court holds that the acceleration of the debt does not constitute "prepayment" for the purposes of RISA because of the ordinary meaning of the word and the fact that "charges payable in the event of late payments" are dealt with in a separate subsection, RISA § 505(12). The language in paragraph 7(c) of Count II pertaining to partial refunds is therefore dismissed because it relates only to "prepayment" under subsection (15).

The rest of the paragraph nevertheless states a claim upon which relief may be granted. Because RISA § 505(12) is a verbatim adoption of Regulation Z § 226.8(b)(4), the word "charges" is held to include acceleration under the state act as well.

CHC also moves to dismiss paragraphs 7(e) and (f) of Count II. These claims are substantially identical to paragraphs 7(f) and (h) of Count I, and are based on RISA § 505(13) and 505's last paragraph, which are in turn copies of the Regulation Z sections upon which the Count I claims were based. The reasoning applied to the Count I claims above also applies to paragraphs 7(e) and (f) with the same result: 7(e) is dismissed and 7(f) is not.

Paragraph 9 of Count II alleges that CHC has violated RISA § 531 by claiming that it may recover all finance charges and keep those which it has already collected. CHC moves to strike the claim because it is immaterial to whether the contract violates the RISA disclosure provisions.

Motions to strike under Federal Rule 12(f) are not favored, and are usually denied unless the language in the pleading has no possible relation to the controversy and is clearly prejudicial. Augustus v. Board of Public Instruction of Escambia County, Florida, 306 F.2d 862, 868 (5th Cir. 1962); Budget Dress Corp. v. International Ladies' Garment Workers' Union, 25 F.R.D. 506, 508 (S.D. N.Y. 1959). Because of this policy, and the fact that the claim in paragraph 9 bears some relation to the issues and the declaratory relief requested, the motion to strike is denied.

CHC further moves to strike language in paragraphs C and E of the prayer for relief of Count II which refers to CHC's collection of finance charges. CHC's theory is that RISA § 531(b), which prohibits the recovery of finance and other charges under contracts which violate the disclosure requirements, should not be read to prevent collection by means other than judicial process.

The question then is the meaning of "recover" as used in § 531(b). As noted above, words used in statutes should, in the absence of specific definition, be given their ordinary meaning. The word "recover" has two permissible meanings. In a broad sense it means "[t]o get or obtain again, *to collect* . . . ." Black's Law Dictionary 1440 (4th ed. 1951) (emphasis added). This definition, of course, supports plaintiff's claim that RISA prevents the voluntary collection of charges on illegal contracts. The narrower meaning of the word, particularly in the form of the noun "recovery," is "to be successful in a suit . . . to obtain . . . a judgment . . . ." *Id.* See also Union Petroleum S. S. Co. v. United States, 18 F.2d 752, 753 (2d Cir. 1927). CHC also points out that the word "recover" had this narrower meaning in § 531(b)'s predecessor, Ill.Rev. Stat., ch. 121½, § 240 (1965).

The purpose of the disclosure provisions is clearly to make borrowers more aware of the consequences

of incurring debts. Where disclosure has been insufficient, the debtor has not been given as full an opportunity to evaluate these consequences as the act intended. CHC's narrow interpretation would draw a distinction between those debtors who voluntarily pay their obligations and those who refuse and are sued even though all of them may have signed the same deficient contract and were thus all denied the act's protection. This would penalize those most in need of the act's protection, the debtors who do not understand their legal rights. Surely this was not the intention of the drafters of § 531(b). This Court therefore holds that the word "recover" will be accorded its broader meaning, to preclude voluntary collection as well as collection by legal action of finance and other charges from debtors under contracts which violate the RISA disclosure provisions.

█ The Court is not unmindful that motions to strike under Federal Rule 12 (f) are not a favored means for disposition of substantial questions of law. United Artists Associated, Inc. v. NWL Corp., 198 F.Supp. 953, 959 (S.D.N.Y. 1961); Dimenco v. Pennsylvania Railroad Co., 126 F.Supp. 417, 418 (D. Del. 1954). Nevertheless, it does not appear that determination of the meaning of "recover" at this stage will prejudice the parties because they have been afforded the opportunity to present and have fully presented their legal arguments on the issue. Moreover, decision on this issue at this stage will facilitate determination of class action questions which remain for disposition.

## II.

Defendants First Finance Company and First Acceptance Company (the "finance companies"), assignees of installment sales contracts made with CHC, move to dismiss and for summary judg-ment as to certain parts of the Second Amended Complaint in this class action.

### Count I

The finance companies first move for summary judgment on Count I which is based on the Truth in Lending Act. The motion asserts three grounds for summary judgment: (1) that the finance companies are not "creditors" as required for liability under TIL; (2) that they extended credit only to CHC and that this conduct is exempt under TIL; and (3) that the finance companies cannot be "creditors" under TIL because this could result in assessment of a double penalty against CHC, which has promised to indemnify them.

█ The last asserted ground is wholly irrelevant to the issue of the coverage of the act. Nothing in the Act or Regulation Z promulgated thereunder even suggests that private arrangements should have any effect on liability for violation thereof.

█ The finance companies correctly assert in their second ground that their loans to CHC, as such, are exempt from TIL (TIL § 104(1), 15 U.S.C. § 1603(1)). This, however, does not dispose of the real issue of whether or not the finance companies are nevertheless "creditors" subject to the act.[2]

█ "Creditors" subject to TIL are those who regularly extend or arrange for the extension of credit for which a "finance charge" is required (TIL § 103 (f), 15 U.S.C. § 1602(f)). Section 106 (a), 15 U.S.C. § 1605(a) makes it abundantly clear that this refers to the extension of credit to consumers.

Plaintiff's theory is that the finance companies are creditors within the meaning of the act because they extended or arranged the extension of credit to consumers through the "conduit" of CHC. Plaintiff finds support for this reading

---

2. Section 130 of TIL, 15 U.S.C. § 1640, imposes civil liability on "creditors" (subsection (a)) and on subsequent assignees of original creditors having security interests in real property (subsection (d)).

Section 130(d) has no application here because no security interests in real property were created by the instalment contracts complained of here.

of the creditor definition in Joseph v. Norman's Health Clubs, 4 CCH Consumer Credit Guide ¶ 99,274 (E.D.Mo., Dec. 5, 1971). The *Joseph* opinion is far from clear, however, and gives no reason for its holding on this point. Accordingly, further analysis is required.

Section 131, 15 U.S.C. § 1641, refers to actions against "subsequent assignees" other than under § 130(d).[3] In Austin v. Ohio Furniture Company, et al., 4 CCH Consumer Credit Guide ¶ 99,610 (N.D. Ohio 1970), relied upon by plaintiff, the court seems to have held that § 131 creates a separate cause of action against assignees under TIL. No reasons are given for the *Austin* holding, and to decide that § 131 creates an independent basis for suit would appear to fly in the face of the specific civil liability provisions of § 130. However, § 131's reference to other suits against subsequent assignees can be reconciled with the provisions of § 130 if it is recognized that some assignees will themselves fit the definition of "creditor" in § 103(f) and will therefore be subject to § 130(a) liability. Such an interpretation would support plaintiff's conduit theory.

■ The finance companies argue that assignees of installment sales contracts should not be considered "creditors" because they do not actually become creditors of the contract debtors until after the signing of the contracts, prior to which time disclosures are required. See TIL § 128(b), 15 U.S.C. § 1638(b). This argument must fail. Under such a theory, no one could be held to account as a "creditor" within the meaning of the act because there would be no creditor until after the debtor signed his contract. ̄

■ After careful consideration of the arguments of the parties and the statutory language itself, this Court concludes that assignees of consumer retail installment sales contracts who regularly extend or arrange for the extension of credit to consumers through the assignors of such contracts may themselves be "creditors" within the meaning of, and subject to liability under, Truth in Lending. To put it another way, lenders may not escape TIL status as creditors by using sales companies as "front men."

Summary judgment will therefore be denied as to Count I. The finance companies have failed to show that there is no genuine issue of fact as to the material issue of whether or not they regularly extended or arranged for the extension of consumer credit.

■ It is true that the finance companies make out a plausible case. They have submitted the affidavit of Masor, their president, to show that they extended credit to CHC and not to consumers. Plaintiff has offered no evidence to rebut this affidavit. Instead, he has submitted a list of "objections" to the motion which assert that the depositions, answers to interrogatories, and pleadings raise a genuine issue of fact. Statements made by counsel in a brief, but not in affidavit form, cannot be given weight on a motion for summary judgment. This Court, accordingly, may consider only the pleadings, the law, and the evidence which the finance companies have offered.

The affidavit of Masor and the "Collateral Loan Agreement" between the finance companies and CHC show that they have underwritten CHC's consumer finance program from 1962 until recently. Under that agreement, the companies made loans to CHC and were assigned the installment contracts. The companies then collected from the contract debtors and, after deducting the amount of the loans due, their interest, and a collection charge, paid the balance to CHC. Masor states that the finance companies did not supply CHC with form contracts or set the terms of those contracts. It does not appear that the agreement gave the companies the power to control the form of the contract. Although the agreement allowed the finance companies to recover on delinquent

---

3. Section 130(d) deals with assignees who receive a security interest in real property.

contracts, Masor asserts that this power was never exercised.

A moving party may be refused summary judgment even if his opponent offers no evidence in rebuttal, if his proof fails to show that there is no genuine issue. See Notes of Advisory Committee on 1963 Amendment to Rule 56. Any doubts as to the existence of a genuine issue of fact must, of course, be resolved in favor of the party opposing the motion. If reasonable minds can draw different inferences and conclusions from the facts offered, summary judgment should not be granted. Harvey v. Great Atlantic and Pacific Tea Co., 388 F.2d 123, 125 (5th Cir. 1968). Construing the facts shown in the affidavit and "Collateral Loan Agreement" in the light most favorable to plaintiff, it is apparent that reasonable minds could differ on the issue of whether or not the finance companies regularly extended or arranged the extension of consumer credit. Even though they may have had no direct contact with the contract debtors, a fact finder could reasonably conclude from the companies' long relationship with CHC that they were the prime movers—they arranged to extend credit to consumers through CHC.

### Count II

The finance companies' motion asserts several grounds for summary judgment or dismissal of parts of Count II, which alleges violations of RISA. The companies' contention is that there can be no pendent jurisdiction over the state claim because they are not "creditors" covered by the federal act. This argument is disposed of in plaintiff's favor by the denial of summary judgment as to Count I, for reasons hereinabove set forth.

The motion to dismiss Count II based on paragraph 5 of defendant CHC's motion to dismiss is denied for reasons set forth in connection with the ruling for plaintiff on CHC's motion.

As to the other grounds urged for summary judgment and dismissal, the finance companies have presented no authorities or analysis on the questions of law raised therein. The bare averments in the motion do not show that movants are entitled to judgment as a matter of law, as required for summary judgment, or that the portions of Count II complained of fail to state claims upon which relief can be granted, as required for motions to dismiss. The motion is therefore denied. It is so ordered.