Luis and Margaret VEGA, husband and wife, Individually and on behalf of others similarly situated, Plaintiffs,

v.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF DETROIT, a Federal Savings and Loan Association, Defendant.

Civ. A. No. 6–71155.

United States District Court, E. D. Michigan, S. D.

June 27, 1977.

Anthony C. Lutostanski, David W. Sinclair, Detroit, Mich., for plaintiff.

William B. Dunn and David M. Hayes, Detroit, Mich., for defendant.

## OPINION

KEITH, Chief Judge.

In 1975 plaintiffs in this action applied for and received a conventional mortgage from defendant for the purchase of their present residence. They bring this action

as a class action alleging numerous violations by defendant of the Truth in Lending Act (15 U.S.C. § 1601 *et seq.*); of Federal Regulation Z promulgated thereunder (12 C.F.R. § 226); of the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*); and of The Department of Housing and Urban Development Regulation X, promulgated thereunder (24 C.F.R. § 82). Jurisdiction of this Court is invoked pursuant to Title 15 U.S.C. § 1640(e), Title 12 U.S.C. § 2614 and Title 28 U.S.C. § 1337.

Specifically, plaintiffs allege that the late payment clause contained in the Note and Disclosure Statement incidental to this transaction and the acceleration clauses contained in the Note and the Mortgage violate the provisions of the Truth in Lending Act (hereinafter TILA). Further, the plaintiffs allege that the Note and Mortgage contain additional default, delinquency, or similar charges that are not properly disclosed as required by the TILA and Federal Regulation Z (hereinafter Regulation Z).

With regard to the Real Estate Settlement Procedures Act (hereinafter RESPA) and The Department of Housing and Urban Development Regulation X (hereinafter Regulation X) plaintiffs allege the following violations:

(1) The Settlement Disclosure Statement provided by Defendant does not conform to the requirements of RESPA and of Regulation X.

(2) Defendant failed to confirm that the sellers or their agents had made the proper written disclosure to plaintiffs as required by RESPA and by Regulation X.

(3) Defendant required escrow deposits for taxes and insurance premiums in excess of those permitted by RESPA.

(4) Defendant has imposed a fee for the preparation and submission of the Disclosure Statement required by RESPA and TILA in violation of Title 12 U.S.C. § 2610.

Defendant here moves for summary judgment as to paragraphs 10, 11, 12, 14, 15, 16, and 17 of plaintiffs' complaint alleging that none of its procedures nor actions have violated either TILA or RESPA nor regulations promulgated thereunder.

*Alleged Violations of the Truth in Lending Act and of Regulation Z*

*Paragraph 10*

In paragraph ten (10) of their complaint, plaintiffs allege that the delinquency clause in defendant's Disclosure Statement and Note makes delinquency charges part of the finance charge in violation of TILA and of Regulation Z.[1,2]

As provided in § 226.4(c) of Regulation Z, a late payment charge is not a finance charge if it is imposed for an actually unanticipated late payment. The issue before

1. The "delinquency clause" of defendant's Disclosure Statement reads in relevant part as follows:

 *Late Charge*
 *If Conventional*—In the event a monthly installment of principal and interest is not received within fifteen (15) days after it is due, a late charge of four per cent (4%) of such installment shall be paid.
 The similar clause in the note signed by plaintiffs reads:
 The undersigned shall pay to the holder hereof a late charge of four percent of any monthly installment not received by the holder hereof within fifteen days after the installment is due.

2. Title 15 U.S.C. § 1638 states in significant part:
 (a) In connection with each consumer credit sale not under an open end credit plan,

the creditor shall disclose each of the following items which is applicable: . . .
 (7) The finance charge expressed as an annual percentage rate . . .
 (b) Except as otherwise provided in this part, the disclosures required under subsection (a) of this section shall be made before the credit is extended, and may be made by disclosing the information in the contract or other evidence of indebtedness to be signed by the purchaser.
 Title 12 C.F.R. § 226.4(c) states:
 (c) *Late payment, delinquency, default, and reinstatement charges.* A late payment, delinquency, default, reinstatement, or other such charge is not a finance charge if imposed for actual unanticipated late payment, delinquency, default, or other such occurrence.

this Court, therefore, is whether the late payment charge assessed by defendant is anticipated or "actually unanticipated" within the meaning of § 226.4(c).

The same question was presented in *Kroll v. Cities Service Oil Company*, 352 F.Supp. 357 (N.D.Ill.1972). At issue in that case was an open-end credit plan established by Cities Service for the benefit of its credit card holders. Under the terms of the plan, payment was due in full upon receipt by the card holder of a monthly statement. If a bill remained unpaid for a period of over 60 days from the initial billing date, Cities assessed the customer a monthly charge of 1½%. The assessment had no effect upon a customer's ability to continue to use his card to make new purchases. Relying upon Federal Reserve Board Interpretation 226.-401 (April 22, 1969), the Court in *Kroll* deemed this late charge to be a finance charge under Regulation Z. *See also Continental Oil Company v. Burns*, 317 F.Supp. 194 (D.Del.1970).

Further interpretation of § 226.4(c) was given in Federal Reserve Board Letter No. 838, 5 Consumer Credit Guide (CCH) ¶ 31,-1601 (September 4, 1974). The situation to which the letter responded was set out in the Letter as follows:

. . . the proper Truth in Lending disclosures to be made by creditors who sometimes allow for repayment to be made in more than four installments, claim to assess no finance charges, yet impose a late payment charge of 1% per month on the outstanding balance. The creditors in question wish to make other than open end credit disclosures and to disclose no finance charge.

It was the opinion of the Federal Reserve Board that in this situation the late payment fees should be disclosed as finance charges.

In the opinion of this Court, the situation at bar is distinguishable from those described above. Here credit is extended on a single occasion for a specified sum. If a borrower neglects to make payment on the due date, a late charge of 4% of that monthly installment is assessed. No assess-ment is made against the entire outstanding balance. Plaintiffs argue that defendant's failure to take steps toward foreclosure at the time when a single payment is overdue should be equated to the continued extension of *new* credit as in *Cities, supra*. This Court considers the analogy between a failure to call in the entire balance of a loan which has already been extended and the extension of new credit an inappropriate one.

The situation is also not precisely on point with that described in FRB Letter No. 838. Defendant here makes no pretense about whether it imposes a finance charge. The fact that a finance charge is imposed is set out clearly in the Note and in the Disclosure Statement.

FRB Letter 838 sets out a two-pronged test for determining when late payment charges are to be considered finance charges. According to Letter 838, "If a creditor imposes late payment charges periodically without regarding the account as delinquent or in default and without taking steps to collect the outstanding balance" late payment charges are viewed as finance charges and should be disclosed as such.

Although this Court is not bound by such an interpretation of § 226.4(c), opinions of the Federal Reserve Board should be given great weight. *Continental Oil Company v. Burns, supra* at 200. This Court, however, does not view the periodic charges referred to by the FRB as the same as those in the instant case. The situation referred to in Letter 838 involves a charge of 1% per month on a customer's outstanding balance. If an account is not settled in one month, a new charge is made on the outstanding balance plus the interest due from the previous month. In defendant's case the charge is not cumulative. It is a one-time charge based on the amount of the monthly payment due and not on the entire balance of the loan.

Moreover, the form of defendant's Disclosure Statement mirrors a recommended Truth-In-Lending form published as Appendix B to Regulation X in which late pay-

ment charges are separately stated. The clear implication is that in situations such as the one at bar, the Federal Reserve Board itself deems late charges as separate and distinct from finance charges and recommends that they be separately disclosed.

Further credence is lent to this interpretation by 12 C.F.R. § 226.8(b)(4):

§ 226.8 Credit other than open end— specific disclosures

(b) *Disclosures in sale and nonsale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed:

(4) The amount, or method of computing the amount, of any default, delinquency or similar charges payable in the event of late payments.

It was the intent of Congress in enacting the Truth-In-Lending Act to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. From a practical perspective, separate disclosure of the charges assessed for late payment more nearly achieves this goal than would stating any possible late charge as a portion of the overall interest rate. A combined statement would make the interest rate a variable one which, rather than being tied to a fluctuating base rate, would be tied to a borrower's success in making his payments promptly. A combined statement would make the actual rate to be paid by a borrower hopelessly confusing and would, in the opinion of this Court, defeat the purposes of the Act.

In summary, it is this Court's opinion that defendant's separate disclosure of the four percent (4%) penalty assessed against each late payment is proper and is in compliance with the TILA and with Regulation Z. *See Black v. G. B. Enterprises*, No. 75–890 at 12 (D.D.C. May 3, 1976) (Court interpreted separately stated delinquency charge similar to the one at bar[3] as a "classic delinquency charge" which was properly disclosed) (dictum).

*Paragraph 11*

Paragraph eleven (11) of plaintiffs' complaint reads:

Defendant's Note . . . and Mortgage . . . contain acceleration clauses constituting additional default, delinquency or similar charges payable in the event of late payment, not disclosed on the Disclosure Statement . . ., contrary to the TILA and Regulation Z. 15 USC 1638(A)(9), 1638(b); CFR 226.-8(a), 226.8(b)(4).

Neither the acceleration clause contained in defendant's Note[4] nor that contained in the Mortgage[5] used by defendant are dis-

---

**3.** The delinquency charge on the Disclosure Statement in *Black* read: "In the event of default of any installment for a period of more than 10 days, the customer may be required to pay a delinquency and collection charge in an amount equal to 5% of each installment in default." *Black, supra* at 11.

**4.** The Acceleration Clause in defendant's Note states:

"If any monthly installment under this Note is not paid when due and remains unpaid after a date specified by a notice sent by certified mail to the undersigned at the address stated below, which date shall not be less than thirty days from the date such notice is mailed, the entire principal amount outstanding hereunder and accrued interest thereon shall at once become due and payable at the option of the holder hereof."

**5.** The Acceleration Clause in defendant's Mortgage states:

"Except as provided in paragraph 14 hereof, upon Borrower's breach of any covenant or agreement of Borrowers in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 14 hereof specifying (1) the breach; (2) the action required to cure such breach; (3) a date, not less than thirty days from the date notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before that date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale herein granted pursuant to applicable law, and

closed on the Disclosure Statement. Defendant does not deny that there is no disclosure of the acceleration clause in the Disclosure Statement but asserts that it is not required by either the TILA nor by Regulation Z to disclose its right of acceleration.

In their complaint plaintiffs allege that defendant's failure to disclose its right of acceleration is a violation of 15 U.S.C. § 1638. However, section 1638 of Title 15 pertains to "Sales not under open-end credit plans—Required disclosures by creditor." The transaction between plaintiffs and defendant was not a "sale". The provisions of section 1638, therefore, do not apply. The extension of credit by defendant to plaintiffs is controlled by the provisions of Title 15 U.S.C. § 1639. The disclosure requirement of section 1639(a)[6] is implemented by 12 C.F.R. § 226.8(b)(4) which provides for the disclosure of "The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments."

The question with which this Court is faced, therefore, is whether the acceleration clauses contained in the Note and Mortgage should be treated as "charges payable in the event of late payments." If so, the lender's right to acceleration must be stated in the Disclosure Statement.

Although this issue is a frequently litigated one and one of obvious concern to borrowers and lenders alike, the TILA and Regulation Z make no specific provision for disclosure of the right of acceleration.

The courts have taken varying positions on this issue. In the recent cases of *Begay v. Ziems Motor Co.*, 550 F.2d 1244, 1249 (10th Cir. 1977) and *Martin v. Commercial Securities Company*, 539 F.2d 521, 529 (5th Cir. 1976) it was held that "in the absence of a regulation requiring it, failure to dis-

close an acceleration clause and the lender's rebate policy with respect thereto in an installment credit transaction does not give rise to a claim for statutory damages." *Accord, Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511 (5th Cir. 1976).

Earlier cases, while not holding completely to the contrary, imposed a narrower construction on § 226.8(b)(4). If upon acceleration, the creditor is required, either by the terms of the agreement or by state law, to rebate the unearned portion of the finance charge, these cases took the view that disclosure is not required. The rationale of these cases is that when a rebate is required, the result is simply a shortening of the time for payment of the principal, not the assessment of an additional penalty. Thus, acceleration is viewed as a remedy rather than a charge. *E. g. Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257, 268 (3rd Cir. 1975); *Black v. G. B. Enterprises, supra. Accord*, Federal Reserve Board Staff Opinion Letter No. 851, 4 Consumer Credit Guide (CCH) ¶ 31,173 (October 22, 1974).

Other courts have taken the completely contrary position that acceleration clauses must be disclosed. *E. g. Kessler v. Associates Financial Services Co.*, 405 F.Supp. 122, 126 (D.C.Hawaii 1975); *LaGrone v. Johnson*, No. C–73 0558ACW (N.D.Cal. Dec. 5, 1974), *rev'd on other grounds*, 534 F.2d 1360 (9th Cir. 1976); *Garza v. Chicago Health Clubs, Inc.*, 347 F.Supp. 955 (N.D.Ill. 1972). In *LaGrone* the district court gave no indication of its underlying rationale for deciding as it did. The court of appeals in that case in affirming the district court's findings on this point relied upon *Ljepava v. M.L.S.C. Properties, Inc.*, 511 F.2d 935, 942 (9th Cir. 1975) on the ground that "the borrower may not be required to 'examine several documents to learn the terms of the loan agreement.' " In *Ljepava* the disclo-

---

any other remedies permitted by applicable law."

**6.** § 1639. Consumer loans not under open end credit plans—Required disclosures by creditor
(a) Any creditor making a consumer loan or otherwise extending consumer credit in a

transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:
(7) The default, delinquency, or similar charges payable in the event of late payments.

sure statement did not explain how charges for late payments were to be calculated. The disclosure statement simply said "Refer to note." [7] *Ljepava*, however did not specifically involve an acceleration clause and there was no discussion of whether the right to acceleration is a "charge" within the meaning of § 226.8(b)(4). In *LaGrone*, *supra*, which did involve an acceleration clause, the court of appeals relied upon *Ljepava* with virtually no discussion of its applicability to the situation before the court. This Court does not find this treatment persuasive.

The courts in *Garza* and *Kessler* while more analytical in their treatment of the issue, based their decisions on a definition of the word "charges" without consideration of the surrounding words in the statute which modify "charges." It is the opinion of this Court that a broader view should be taken.

Defendant in the case at bar argues vigorously that in its Note and Mortgage it reserves only the right to accelerate the principal and accrued interest, and based on this argument, defendant cannot be the recipient of a "windfall" and there is, therefore, no "charge" requiring disclosure.

While the language used in defendant's Note states clearly that only the principal and the earned interest will become due upon acceleration, the language in the mortgage is not as clear. The language states that a breach by the borrower will result in "acceleration of the sums secured by this Mortgage" and again, if the breach is not cured by a specified time, the lender, at its option "may declare all of the sums secured by this Mortgage to be immediately due and payable . . . ." While plaintiffs concede that the language in the note is clear, they argue that the language of the mortgage demands principal and unearned interest, and when read together the accel-

eration clauses become confusing and misleading. The Court agrees that the language of the acceleration clause in the mortgage could be more specifically stated. However, there is no specific statement in the acceleration clause in the mortgage calling for acceleration of unearned interest. Therefore, the Court finds no direct contradiction between the two clauses. A mortgage is merely security for a note, and it is an accepted rule of construction that when they are part of the same transaction, the note and mortgage are to be read together. In reading them together, this Court does not consider the acceleration clauses contained therein to be confusing or misleading. The more specific language of the note serves to clarify the generality of the acceleration clause in the mortgage.

Without specifically holding that it is a prerequisite to obviating the need to disclose, the Court is persuaded by the fact that activation of the acceleration clauses will result only in the acceleration of earned interest and will not result in payment of additional monies by the borrower nor in a windfall for the creditor. The Court is, therefore, of the opinion that the lender's right of acceleration is not a charge payable in the event of late payments, and while this Court is of the opinion that because of its significance to the buyer, the lender's right acceleration should be disclosed, the requirement of disclosure is properly a legislative function. As the statute and regulations are presently written, this Court finds no mandate for disclosure.

*Paragraph 12*

In paragraph twelve (12) of their complaint and in their pleadings plaintiffs allege that defendant's failure to disclose the lender's assessment of attorney's fees and other collection costs in the event of default in violation of the TILA and of Regulation Z, 12 C.F.R. § 226.8(b)(4).[8] Un-

---

**7.** The court additionally pointed out that the term "note" itself was ambiguous. Moreover, there were ten promissory notes involved in the transaction.

**8.** In its Note defendant states: "In the event of any default in the payment of this Note and if

suit is brought hereon, the holder hereof shall be entitled to collect in such proceeding all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees."

In its Mortgage defendant states in its acceleration clause: "Lender shall be entitled to

der plaintiffs' interpretation of the requirements of the TILA and of Regulation Z, attorney's fees and other collection costs are "charges payable in the event of late payments" and must be disclosed.

The issue of whether attorney's fees and other foreclosure costs constitute charges has been addressed on several occasions in Federal Reserve Board Staff Opinion letters. Federal Reserve Board Letter No. 591, Consumer Credit Guide (CCH) ¶ 30,834 (April 10, 1972); Federal Reserve Board Letter No. 291, Consumer Credit Guide (CCH) ¶ 30,528 (March 19, 1970); Federal Reserve Board Letter (no number given), Consumer Credit Guide (CCH) ¶ 30,404 (June 23, 1969). *See also* Federal Reserve Board Letter No. 768, Consumer Credit Guide (CCH) ¶ 31,090 (April 4, 1974). The opinions expressed have been consistent:

"Specifically, you ask whether attorney's fees and foreclosure costs assessed on a nonautomatic basis at the sole discretion of the creditor need to˙ be disclosed pursuant to that section. It is staff's opinion that, if the imposition of these charges is automatic (for example, if the charge becomes immediately due and collectible by virtue of default), the charges must be disclosed under § 226.-8(b)(4). If, however, the imposition of the charge is not automatic but is conditioned upon employment of the services of an attorney to effect collection or expenditure of amounts in conjunction with foreclosure proceedings, such charge need not be disclosed under § 226.8(b)(4)."

Federal Reserve Board Official Staff Interpretation No. FC–0054, 42 F.R. 18056, Consumer Credit Guide (CCH) ¶ 31,552 (March 21, 1977).

In *Jacobson v. American National Bank and Trust Co.*, No. 75 C 40 (N.D.Ill. May 19, 1976) and in *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871 (7th Cir. 1976) the courts, following FRB staff interpretations, held that where charges for attorney's fees, costs of repossession, sale of

repossessed property and the like are imposed at the creditor's election and are˙ not automatic, they need not be disclosed.

The assessment of attorney's˙ fees and other costs of foreclosure in the case at bar is similar to that in the aforementioned cases. Here defendant reserves the right to charge a borrower for these costs. These costs are assessed, however, at defendant's option and are, therefore, not automatic.

Although not binding on this Court, as stated *supra*, the interpretation of the agency which promulgated the rules is entitled to great weight, and courts, as a rule, are reluctant to substitute their judgment for the judgment of those with administrative expertise in the area. *See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 372, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971, 976 (5th Cir. 1974).

In the view of this Court, the interpretation of the requirement of disclosure of attorney's fees under § 226.8(b)(4) articulated by the Board in its opinion letters is a reasonable one. Moreover, the Court finds plaintiff's arguments against this line of reasoning less than persuasive. Therefore, the Court accepts the Board's interpretation and concludes that the charge need not be included in the disclosure statement.

### Alleged Violations of the Real Estate Settlement Procedures Act and of Regulation X

*Paragraph 14*

 Paragraph fourteen (14) of plaintiffs' complaint (clarified by additional pleadings) alleges that defendant's Disclosure Statement for advance disclosure of settlement costs does not conform to the Uniform Settlement Disclosure Statement required by RESPA and by Regulation X. 12 U.S.C. §§ 2603, 2605; 24 C.F.R. § 82.6 as originally enacted. Specifically, plaintiff alleges 16 instances where defendant deviated from the prescribed layout on HUD–1,

---

collect all reasonable costs and expenses incurred in pursuing the remedies provided in

this paragraph 18, including, but not limited to, reasonable attorney's fees."

appended to Regulation X, either by capitalizing line items that were not in all capital letters on the authorized form or by failing to capitalize fully certain other line items.

As originally enacted Title 24 C.F.R. § 82.6(b)(5), effective May 22, 1975, read:[9]

No changes in the size or type style of print or the layout of the first two pages of the form shall be made, except as follows:

(A) The layout of the form may only be reset in type if such type style is approximately the same size and appearance, is easily readable, and the entire form layout is identical to the format as prescribed by HUD; and,

(B) Where necessary to accommodate computer equipment, the first two pages of the form may be printed in the larger size of print and different type style and a distance between lines may be increased, but not decreased, but there shall be no other change in the layout or placement on the form . . .

Plaintiffs argue in their brief that a strict compliance standard is necessary to effectuate the intent of Congress in passing RESPA. The Court does not agree. Congress' stated purpose in enacting RESPA was to effect changes in the settlement process for residential real estate that would result "in more effective advance disclosure to home buyers and sellers of settlement costs." 12 U.S.C. § 2601(b)(1). The Court fails to see how the violations alleged by plaintiffs fly in the face of this stated purpose.

The violations asserted by plaintiffs resulted in no actual harm to plaintiffs. Although there are variances from the prescribed lower and upper case on defendant's form, the type remains easily readable, and the format is essentially the same as that

prescribed by HUD–1.[10] Moreover, since its enactment, RESPA has been amended to more fully effectuate congressional purpose. H.R.Rep.No.667, 94th Cong., 1st Sess., *reprinted in* [1975] U.S.Code Cong. & Ad.News p. 2448. The section under which plaintiffs make these assertions of non-compliance has been repealed. Pub.L. 94–205, § 5, 89 Stat. 1158 (Jan. 2, 1976). Additionally the current corresponding section of Regulation X is more liberally stated and variations from lower to upper case type would clearly be allowed in the current version.[11]

For the above stated reasons, primary among which is the absence of any injury to plaintiffs, the Court will not hold defendant to a standard of strict compliance and will hold that under the circumstances of this case, defendant's violations were *de minimus.*

*Paragraph 15*

■ Title 12 U.S.C. § 2606 (repealed 1976) stated:

### DISCLOSURE OF PREVIOUS SELLING PRICE OF EXISTING REAL PROPERTY

(a) No lender shall make any commitment for a federally related mortgage loan on a residence on which construction has been completed more than twelve months prior to the date of such commitment unless it has confirmed that the following information has been disclosed in writing by the seller or his agent to the buyer—

(1) the name and address of the present owner of the property being sold;

(2) the date the property was acquired by the present owner (the year only if the property was acquired more than two years previously); and

---

**9.** Section 3500.9(a)(5) of Regulation X, Title 24 C.F.R. Part 3500 which supersedes 24 C.F.R. Part 82, reads:

The following variations in layout and format are within the discretion of persons reproducing HUD–1 and do not require prior HUD approval: size of pages; tint or color of pages; size and style of type or print; . . .

**10.** Other variations exist on the Advance Disclosure form but the permission of the Secretary of HUD was obtained for these.

**11.** See footnote 9.

(3) if the seller has not owned the property for at least two years prior to the date of the loan application and has not used the property as a place of residence, the date and purchase price of the last arm's length transfer of the property (excluding maintenance repairs) and the cost of such improvements.

(b) The obligations imposed upon a lender by this section shall be deemed satisfied and a commitment for a federally related mortgage loan may thereafter be made if the lender receives a copy of the written statement provided by the seller to the buyer supplying the information required by subsection (a).

(c) Whoever knowingly and willfully provides false information under this section or otherwise willfully fails to comply with its requirements shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

Paragraph fifteen (15) of plaintiffs' complaint alleges that defendant violated this section by failing to confirm that the sellers had made the proper written disclosures as required by RESPA and by Regulation X. In its motion for summary judgment, defendant asserts that it received a copy of the Disclosure/Settlement Statement prior to making a mortgage loan offer. An affidavit is attached supporting defendant's allegation.

Plaintiffs' response concedes defendant's argument and retracts the allegation made in their complaint, but maintains that the paragraph should still stand because plaintiffs have brought this action as a class action and other members of the class may have been affected. Plaintiffs allege no known instances where defendant has violated the section in question; rather they assert that "random spot-checking of defendant's files for the presence of this completed form in the other transactions" would reveal whether defendant has violated the statute in the past. Pl. Brief in opposition to Defendant's Motion for Summary Judgment and Motion to Dismiss at 19.

Rule 23(a)(3) of the Federal Rules of Civil Procedure states that a prerequisite for certification of an action as a class action is that "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." It is difficult for this Court to understand how plaintiffs propose to adequately represent others on a claim in which they have no interest. Vigorous representation would be lacking where the representative plaintiffs have suffered no harm. Furthermore, this Court stands unprepared to sanction what is tantamount to a fishing expedition through defendant's files for the purpose of ascertaining the possible existence of a cause of action. Consequently, in the opinion of this Court, paragraph 15 of plaintiffs' complaint cannot stand.

*Paragraph 16*

In paragraph sixteen (16) of their complaint, plaintiffs allege that defendant required escrow deposits for taxes and insurance in excess of those permitted by RESPA. In their pleadings in opposition to this motion, plaintiffs make no mention of any excess insurance premiums. The Court, therefore, will not consider this portion of their allegation.

Title 12 U.S.C. § 2609 (1974) (amended 1976) is the applicable section. As originally enacted, it stated in relevant part:

### LIMITATION ON REQUIREMENT OF ADVANCE DEPOSITS IN ESCROW ACCOUNTS

No lender, in connection with a federally related mortgage loan, shall require the borrower or prospective borrower—

(1) to deposit in any escrow account which may be established in connection with such loan for the purpose of assuring payment of taxes and insurance premiums with respect to the property, prior to or upon the date of settlement, an aggregate sum (for such purpose) in excess of—

(B) in any jurisdiction where such taxes and insurance premiums are pre-

paid, a pro rata portion of the estimated taxes and insurance premiums corresponding to the number of months from the last date of payment to the date of settlement.

plus one-twelfth of the estimated total amount of such taxes and insurance premiums which will become due and payable during the twelve-month period beginning on the date of settlement.

Defendant estimated plaintiffs' total city tax to be $228.00 and their county tax to be $39.00. Plaintiffs' closing occurred on September 17, 1975. City taxes had last been paid on December 1, 1974, and county taxes were last paid on July 1, 1975. The statute allows defendant to deposit in escrow "a pro rata portion of the estimated taxes . . . corresponding to the number of months from the last date of payment to the date of settlement. . . ." In the case of city taxes, a period of 9.6 months had passed, and in the case of county taxes, 2.6 months had elapsed. Therefore, at the time of closing, defendant was permitted to collect the following taxes:

County Taxes 9.6/12 × $ 39.00 = 9.6 × $ 3.25 = $31.20
City Taxes 2.6/12 × $228.00 = 2.6 × $19.00 = $49.40
 TOTAL $80.60

In addition to the $80.60 lump sum payment defendant is allowed to collect under § 2609, the statute provides that the lender may collect "one-twelfth of the estimated total amount of such taxes . . . which will become due and payable during the twelve-month period beginning on the date of settlement . . . ."

As stated above, defendant estimated that $39.00 in county taxes and $228.00 in city taxes would become due and payable between September 17, 1975, and September 17, 1976. This would result in the defendant being able to additionally collect the following amounts.

City Taxes $19.00 (1/12 of $228.00)
County Taxes $ 3.25 (1/12 of $ 39.00)
TOTAL $22.25

Therefore, the Court concludes that under § 2609, as applied to the facts of the case at bar, defendant was entitled to collect a total of $102.85 ($80.60 + $22.25) at the time of closing to be deposited in an escrow account for the payment of taxes. At the time of closing, however, defendant required plaintiffs to deposit only $89.50 into its escrow reserves. Consequently, the Court concludes that the allegations of paragraph 16 of plaintiffs' complaint are without merit.

*Paragraph 17*

Plaintiffs here allege that defendant has imposed a fee or charge for the preparation and submission of the Disclosure Statement required by RESPA and TILA in violation of Title 12 U.S.C. § 2610.[12]

In response to this allegation defendant has submitted the affidavit of Bruce E. Ruffin, Assistant Vice President of defendant, which states that defendant charged plaintiffs $250.00 as a processing/closing fee. The affidavit further asserts that this charge has been consistently imposed by defendant since September 18, 1973, and it flatly denies having imposed any fee upon plaintiffs for preparation or submission of the Disclosure/Settlement Statement or the Disclosure Statement.

In response to defendant's assertions, plaintiffs have submitted a diatribe on the evils of the "Settlement Charge Rip-Off" with liberal references to the comments of Senator William Proxmire regarding RESPA reported in 1974 U.S.Code Cong. & Ad. News pp. 6557–68. Additionally, plaintiffs have again prevailed upon the Court to allow them to develop proof of their contentions through discovery.

**12.** Title 12 U.S.C. § 2610. Fee for preparation of truth-in-lending and uniform settlement statements.

No fee shall be imposed or charge made upon any other person (as a part of settlement costs or otherwise) by a lender in connection with a federally related mortgage loan made by it (or a loan for the purchase of a mobile home), for or on account of the preparation and submission by such lender of the statement or statements required (in connection with such loan) by sections 2603 and 2605 of this title or by the Truth in Lending Act.

**636**

On a motion for summary judgment, plaintiffs cannot rest on the mere allegations in their complaint when confronted with an affidavit of the opposing party. They must set forth specific facts showing the existence of a genuine issue for trial. Otherwise, where appropriate, summary judgment will be granted against them. *See Stevens v. Barnard*, 512 F.2d 876, 878 (10th Cir. 1975); *Garcia v. American Marine Corp.*, 432 F.2d 6, 7 (5th Cir. 1970).

Plaintiffs have failed to submit any facts to lend any support to the allegations of Paragraph 17 of their complaint. The Court must, therefore, conclude that plaintiffs' allegations are lacking in foundation.

An appropriate order will be entered.