**Alvin L. ECENRODE and Goldie Ecenrode, Plaintiffs,**

v.

**HOUSEHOLD FINANCE CORPORATION OF SOUTH DOVER, a Delaware Corporation, Defendant.**

**Civ. A. No. 75–333.**

United States District Court, D. Delaware.

Nov. 11, 1976.

---

**1330**

Gary A. Myers, Community Legal Aid Society, Inc., Dover, Del., for plaintiffs.

Wilmer C. Bettinger, of Schmittinger & Rodriguez, Dover, Del., for defendant.

## OPINION

STAPLETON, District Judge:

This is an action for violation of the Truth in Lending Act (15 U.S.C. § 1601, *et seq.*) arising out of a loan transaction between plaintiffs Alvin and Goldie Ecenrode and defendant Household Finance Corporation of South Dover. Plaintiffs originally alleged one violation of the Act and regulations issued pursuant to that Act by the Federal Reserve Board (hereinafter referred to as Regulation Z), and subsequently amended their complaint on two occasions to allege six additional violations arising out of the same loan transaction.

■ Defendant has filed a motion to dismiss contending that none of the allegations concerning the seven asserted violations of the Act state a claim upon which relief can be granted. Defendant also moved to strike plaintiffs' claim for attorney's fees as immaterial in view of the asserted inability of plaintiffs' counsel, the Community Legal Aid Society, Inc., to accept an award of attorney's fees in this case.[1]

■ As to the motion to strike, the Third Circuit in *Manning v. Princeton Consumer Discount Company, Inc.,* 533 F.2d 102 at 106 (3rd Cir. 1976) resolved any doubts concerning the materiality of plaintiffs' claim for attorney's fees, holding:

> A creditor who fails to provide any information required to be disclosed to the consumer is liable "for a reasonable attorney's fee." 15 U.S.C. § 1640(a). The Act does not make the award contingent upon the plaintiff's obligation to pay her attorney or whether a fee in fact was charged.

Defendant's motion to strike plaintiffs' third prayer for relief is denied.

■ Plaintiffs allege that defendant failed to clearly identify that property in which a security interest was obtained in violation of 15 U.S.C. § 1639(a)(8) and Sec-

---

1. Defendant also contends that the allegations of paragraphs 7(b)–7(g) of the third amended complaint are barred by the statute of limitations. I disagree. The allegations of these paragraphs relate back to the date of the original pleading and defendant had adequate notice that plaintiffs were challenging the legality of the loan agreement under the Truth in Lending Act. *Artman v. International Harvester Company,* 355 F.Supp. 476 (W.D.Pa.1972); 6 *Wright and Miller* § 1497 at 495; 3 *Moore's Federal Practice* ¶ 15.5[3] at 1027–1031. (Also see my Order of May 27, 1976, permitting plaintiffs to file a third amended complaint because the allegations raised there as to additional violations of the Truth in Lending Act related back to the date of the original pleading and because I could find no prejudice to defendant in permitting the amendment).

I also reject defendant's contention that paragraphs 8 and 9 of the complaint should be dismissed because they raise questions of state law over which the Court should decline to exercise subject matter jurisdiction. Plaintiffs have not asserted any state law claims for relief. The allegations concerning violations of state law were made as part of plaintiffs' contention that defendant violated the Truth in Lending Act in part by claiming a security interest in after-acquired consumer and household goods which plaintiff claims is illegal under Delaware law.

tions 226.8(b)(5) and 226.6(c) of Regulation Z.[2] In particular, plaintiffs assert, the creditor's statement that the security agreement "may cover after-acquired property"[3] is misleading and erroneous in part because under Delaware law a creditor may only obtain an interest in those after-acquired goods which the debtor acquires within ten days of the secured party's giving value.[4] I find that this segment of the complaint states a claim for relief under Sections 226.-8(b)(5) and 226.6(c).

Erroneous statements of a creditor's rights against the debtor under state law are not the kind of "meaningful disclosure" contemplated by Congress when it passed the Truth in Lending Act. See 15 U.S.C. § 1601. As Chief Judge Morgan noted in *Johnson v. Associates Finance, Inc.,* 369 F.Supp. 1121 (S.D.Ill.1974) with respect to a security agreement provision virtually identical to the one alleged here:

> The challenged provision fails to clearly and accurately define the extent of the defendant's security interest and seems almost patently designed to mislead and confuse the borrower in that regard. As such, it violates the spirit of the law as well as the letter of Sections 226.6(c) and 226.8(b)(5) of Regulation Z.[5]

Defendant's motion to dismiss paragraph 7(a) of the complaint will be denied.

2. 15 U.S.C. § 1639(a)(8) provides:

(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

\* \* \* \* \* \*

(8) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

Section 226.8(b)(5) of Regulation Z provides:

(b) *Disclosures in sale and nonsale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed:

\* \* \* \* \* \*

(5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable. If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clear-ly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

Section 226.6(c) of Regulation Z provides, *inter alia:*

(c) *Additional information.* At the creditor's option, additional information or explanations may be supplied with any disclosure required by this part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer or contradict, obscure, or detract attention from the information required by this part to be disclosed. . . .

3. It is possible to read the Loan Agreement as referring to a separate document called a Chattel Mortgage Security Agreement, but neither side has suggested that the transaction is recorded in two instruments. In any event, at the motion to dismiss stage, I assume that the sole provision relating to a security interest in after-acquired property is that reflected in the Loan Agreement (or "Form Note and Disclosure") attached to the complaint.

4. 6 Del.C. § 9–204(4)(b) provides:

(4) No security interest attaches under an after-acquired property clause

\* \* \* \* \* \*

(b) to consumer goods other than accessions (Section 9–314) when given as additional security unless the debtor acquires rights in them within 10 days after the secured party gives value.

5. See also *Kenney v. Landis Financial Group, Inc.,* 349 F.Supp. 939 at 950–51 (N.D.Iowa 1972) (security agreement with provision identical to one alleged here violated Section 226.-6(c)); *Ives v. W. T. Grant,* 522 F.2d 749 at 761 (2nd Cir. 1975) (describing a security interest when there is none may violate the Connecticut truth in lending regulation patterned on Section 226.6(c)).

■ Defendant next challenges plaintiffs' assertion that failure to identify the security agreement's acceleration provision as a default charge violates the Truth in Lending Act and Section 226.8(b)(4) of Regulation Z.[6] Plaintiffs argue that, while defendant is required under Delaware law to rebate unearned portions of the finance charge in the event of voluntary payment of the loan prior to maturity, it is not required to rebate such unearned charges in the event of plaintiffs' default and acceleration of the unpaid balance of the loan. The failure to rebate upon acceleration of the loan, plaintiffs assert, constitutes a default charge which should be disclosed pursuant to Section 226.8(b)(4).

Defendant argues that under Delaware law unpaid portions of the finance charge must be rebated in the event of acceleration in the same manner as is required where the loan is voluntarily prepaid, and that that method is disclosed in the portion of the note dealing with rebate of the finance charge for prepayment in full.

The question of whether unearned finance charges are to be rebated in the event of acceleration of a loan upon default is an unclear one under Delaware law. Whatever may be the proper resolution of that question, however, it is clear that defendant's motion to dismiss must be denied. Where a loan is voluntarily prepaid, un-earned finance charges are rebated. If a creditor is permitted to retain unearned finance charges in the event of default and acceleration, that would represent the assessment of an additional penalty charge incurred because of late payment of an installment. *Cf. Johnson v. McCrackin-Sturman Ford, Inc.,* 527 F.2d 257 (3rd Cir. 1975). As such, Section 226.8(b)(4) would require the disclosure of that assessment as a default charge.[7] No such disclosure was made here.

On the other hand, if rebate of finance charges is required and the method of rebate is different for acceleration than it is for voluntary prepayment, then both methods should be identified under Section 226.-8(b)(7) of Regulation Z.[8] (See Federal Reserve Board staff letter of October 22, 1974). The loan agreement alleged here discloses in detail the method of rebate for prepayment in full in one section. In another section, it discloses that in the event of default of more than 30 days on a monthly installment the creditor may "render the entire sum remaining unpaid . . . at once due and payable, *less any required rebate of Finance Charge*".[9] The implication is that the method of rebate for voluntary prepayment is different from the method anticipated by the creditor in the event of default and acceleration of the loan. Under Section 226.8(b)(7) the latter method should have been disclosed.[10] Thus,

---

**6.** Section 226.8(b)(4) of Regulation Z provides:
 (b) *Disclosures in sale and nonsale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed:
 \* \* \* \* \* \*
 (4) The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.

**7.** See Federal Reserve Board staff letter of October 22, 1974, reported in part in *Johnson* and acknowledged by the *Johnson* court to represent the opinion of the Board, which opinion is entitled to great weight.

**8.** Section 226.8(b)(7) provides:
 (b) *Disclosures in sale and nonsale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed:
 \* \* \* \* \* \*
 (7) Identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to an obligation or refunded to the customer. If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed.

**9.** See Exhibit A attached to the first amended complaint (emphasis added).

**10.** Even if the method of rebate were in fact the same in both instances, the language "less any required rebate" suggests either that rebate might not be made or that it might be made in a manner different from that disclosed in the case of voluntary prepayment. As such it con-

regardless of whether rebate is required under Delaware law, consumers confronted with a loan agreement such as the one involved here would be left in the dark as to precisely what credit charges the lender will assess. Failure to fully inform consumers about the cost of credit, thereby preventing them from comparing relative credit costs, is precisely the evil which the Truth in Lending Act was designed to prevent. *Zeltzer v. Carte Blanche*, 514 F.2d 1156 (3rd Cir. 1975).[11]

 Defendant also challenges plaintiffs' claim that the alleged disclosure, that "attorney fees may be charged, if the account is actually turned over to an attorney and he has commenced proceedings thereon" violates the Truth in Lending Act and Section 226.8(b)(4) of the Regulations which provide for the disclosure of default charges. Plaintiffs claim that the alleged disclosure erroneously states Delaware law because the Delaware Small Loans Act (5 Del.C. § 2101, *et seq.*) prohibits the assessment of attorney's fees in a collection action by a small loan creditor. Defendant counters that the controlling state law is Section 3912 of Title 10 of the Delaware Code, which permits reasonable attorney's fees to be awarded in "all causes of action . . . brought for the enforcement of any note."

I have been unable to find and have not been directed to any decision of the Delaware courts on whether attorney's fees incurred in the recovery of money loaned may be assessed against the borrower where the loan was made under the authority of the Delaware Small Loans Act. Sections 2108 and 2109 of that Act regulate the interest rate and service fee a creditor may charge and provide that the only other charge which may be assessed in the event of default is a fine of not more than 5 percent of the amount of the payment in which default is made. Section 2111(c) of the Act relied on by plaintiffs, regulates the interest a creditor may recover in an action for the recovery of money loaned and prohibits the attachment of a borrower's wages for the purpose of collection. None of these sections, however, prohibit the assessment of attorney's fees.[12] On the other hand the Delaware Small Loan Operating Regulations promulgated by the State Banking Commission seem to recognize that attorney's fees may be charged in collection actions. Regulation 14 provides:

*Collection Fee:*

Attorneys' fees for collection as allowed by law, and so included in the evidence of debt and other supporting papers, shall not be charged to the borrower unless the account is actually proc-

---

stitutes additional information or explanation "placed so as to mislead or confuse the customer" in violation of Section 226.6(c).

11. This is not a case like *Johnson* where the loan agreement was silent as to rebate in the event of acceleration, but it was clear under state law that rebate would be required and that the method of repayment would be the same as in the case of voluntary prepayment. There the court read into the provision on acceleration the state law rebate requirement. And since the method of repayment was disclosed in the portion of the note dealing with voluntary prepayment and that method would also be used in the case of acceleration, the court held that the note need not have repeated the disclosure. Here, the creditor referred to possible rebate in the section dealing with acceleration but did not make it clear whether the unearned finance charges would in fact be rebated and if so, how. A creditor's statement

that it will charge the consumer as much as the law permits is not a "meaningful disclosure" under the Truth in Lending Act.

12. It is true as plaintiffs point out that the Small Loan Act was originally enacted to prevent usurious practices accomplished by charging borrowers a reasonable interest rate but high fees for "imaginary" services such as attorney's services. (See preamble to 23 Del. Laws C. 149). But it is clear that the concern over attorney's fees was not that baseless fees were being charged when creditors sought recovery of the money loaned, but rather that such fees were being used at the outset to inflate the effective interest rate being charged. It was to combat such practices that what is now 5 Del.C. § 2108 set limits both on the interest rates that may be charged and the additional investigation fee or service charge which may be assessed against the debtor.

essed by an attorney not an employee of the lender.[13]

Most persuasive, however, is 10 Del.C. § 3912 which permits the assessment of reasonable attorney's fees in *all* actions brought to enforce *any* note or written instrument. Both this section and the relevant provisions of the Small Loan Act have co-existed for over 60 years. The legislature could long ago have articulated its desire to exempt actions to enforce loan agreements entered into pursuant to the provisions of the Small Loans Act from the all-inclusive language of Section 3912 directed specifically to the award of attorney's fees in all actions. Its failure to do so suggests that no such exemption was intended. Since I find no erroneous statement of Delaware law as to the assessment of attorney's fees, paragraphs 7(c) and 7(d) of the complaint will be dismissed for failure to state a claim for which relief can be granted. Federal Rule of Civil Procedure 12(b)(6).[14]

■ Defendant further challenges plaintiffs' claim that the amount allegedly designated as a service fee in the loan should have been designated and disclosed as a prepaid finance charge pursuant to Sections 226.8(d)(2) and 226.4 of Regulation Z. I agree with plaintiffs that the alleged service charge represents a prepaid finance charge. It was deducted from the amount financed and was not refundable in the event of any rebate of finance charge for prepayment in full. See *Jones v. Community Loan and Investment Corporation of Fulton County*, 526 F.2d 642 (5th Cir. 1976). And, while the alleged loan agreement makes it clear that the service charge is a sum which the consumer will not have the use of as part of the amount financed and which will not be returned in the event of early repayment of the loan, it fails to label this sum a prepaid finance charge. Thus, although the purposes behind requiring certain charges to be labeled as prepaid finance charges have been served by this creditor's explanatory disclosures elsewhere in the loan agreement, the literal terms of the Regulation have nevertheless been violated. I need not decide, however, whether such a technical violation alone calls for imposition of penalties under the Truth in Lending Act[15] in view of my conclusions above that the alleged agreement contains other clear violations of the Act. Defendant's motion to dismiss paragraph 7(f) of the complaint is denied.

■ Finally, defendant challenges plaintiffs' assertion that the loan agreement violates Sections 226.8(b)(6)[16] and (b)(7) of Regulation Z by failing to disclose that unearned credit insurance premiums are to be refunded in the event the loan is prepaid. Plaintiffs are correct on their

---

13. The disclosure in the note alleged here parallels Regulation 14 indicating that attorney's fees for collection may only be charged if the account is turned over to an attorney.

14. Plaintiffs have also asserted that even if attorney's fees could be charged, the loan agreement disclosure erroneously states that such fees may be collected "if the account is actually turned over to an attorney and he has commenced proceedings thereon" because in fact attorney's fees may only be collected after a creditor obtains a judgment. I think that such timing is necessarily implied by the context in which the disclosure is made and the language used should create no confusion in the consumers' minds nor impair their ability to assess comparative credit costs. Consequently, I find that paragraph 7(c) of the complaint does not state a claim for relief on this basis either.

15. See, for example, *Zeltzer v. Carte Blanche, supra*, where the Third Circuit found both a technical violation of the Truth in Lending Act and contravention of the purposes of the Act before assessing liability.

16. Section 226.8(b)(6) provides:

(b) *Disclosures in sale and nonsale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed:

\* \* \* \* \* \*

(6) A description of any penalty charge that may be imposed by the creditor or his assignee for prepayment of the principal of the obligation (such as a real estate mortgage) with an explanation of the method of computation of such penalty and the conditions under which it may be imposed.

state law. Regulation 11 of the Delaware Small Loan Operating Regulations requires that creditors rebate any unearned insurance premiums collected. At the same time, however, this obligation to rebate precludes any holding that these unearned premiums are penalty charges for prepayment which must be disclosed pursuant to Section 226.8(b)(6). *Cf. Johnson v. McCrackin-Sturman Ford, Inc., supra.*[17] Paragraph 7(g) of the complaint does not state a claim for relief for violation of Section 226.8(b)(6).

Similarly I find that paragraph 7(g) fails to state a claim for relief under Section 226.8(b)(7). By definition, non-mandatory insurance premiums, such as the ones alleged here are not "finance charges" as that term is defined in Section 226.4 of Regulation Z.[18] Consequently, Section 226.8(b)(7), which requires disclosures concerning the amount or method of computing unearned finance charges and the rebate of such charges, is not applicable to the insurance premiums allegedly charged here. Paragraph 7(g) of the complaint is dismissed for failure to state a claim for relief under either Section 226.8(b)(6) or (b)(7).[19]

**17.** Nor do I find that the creditor's alleged failure to disclose that such premiums will be rebated represents an assertion that it will retain the premiums in the event of prepayment of the loan in full. As in the *Johnson* case the provisions of the agreement must be read in light of the applicable state law requiring rebate of insurance premiums.

**18.** Section 226.4(a)(5) provides:

(a) *General rule.* Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:

\* \* \* \* \* \*

(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

**19.** Plaintiffs also claim in paragraph 7(e) of their complaint that the provision in the loan agreement that the credit life and disability insurance premiums will be deducted from the amount financed is confusing and, accordingly, is in violation of Section 226.6(c) of Regulation Z. While a clearer statement would have been that these charges would be included in the amount financed, but would be paid out to the insurers as premiums, I do not find the language sufficiently confusing to constitute a violation of Section 226.6(c). (But see contra *Weaver v. General Finance Corporation*, 528 F.2d 589 (5th Cir. 1976)). Accordingly, paragraph 7(e) of the complaint is also dismissed for failure to state a claim for relief.