**Chuck ST. GERMAIN,
Plaintiff-Appellant,**

v.

**BANK OF HAWAII, Defendant-Appellee.**

No. 76–2007.

United States Court of Appeals,
Ninth Circuit.

· Dec. 30, 1977.

John H. Paer (argued), Richard S. Kanter, Linda-Mei Leong, Legal Aid Society of Hawaii, Honolulu, Hawaii, for plaintiff-appellant.

David J. Reber (argued), of Goodsill, Anderson & Quinn, Honolulu, Hawaii, for defendant-appellee.

Before ELY, HUFSTEDLER and WRIGHT, Circuit Judges.

HUFSTEDLER, Circuit Judge:

The thorny question presented on this appeal is whether the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, requires disclosure of an acceleration clause in a retail installment contract. The district court held that disclosure was not required (*St. Germain v. Bank of Hawaii* (D.Hawaii

1976) 413 F.Supp. 587), and it granted the Bank of Hawaii's motion for summary judgment. We reverse, holding that TILA compels a creditor making a consumer loan to disclose the creditor's right to accelerate full payment of the debt upon the debtor's default or late payment.

The contract is a standard form "Retail Installment Contract (Automobile)." The face of the contract recites in simple language important rights and duties of the parties. Section four, captioned in large type "DELINQUENCIES AND OTHER CHARGES," states that the debtor will incur a 5 percent delinquency charge, plus a part of the creditor's attorney's fees and/or collector's fees in the event of default or late payment. Section three, captioned "PREPAYMENT PRIVILEGE," states that the debtor is entitled to a refund of unearned finance charges if he pays the debt before maturity. Nothing is said about the creditor's right to accelerate if the debtor defaults or pays late nor about the possibility of any rebate of unearned finance charges if the debt is accelerated. On the back of the contract in small print, the contract says that, upon default, "the full amount hereof shall at the Seller's option be immediately due and payable and Seller shall have the rights and remedies of the holder of a retail installment contract under Chapter 476, Hawaii Revised Statutes." No reference is made to the rebate of unearned interest upon acceleration.

The question whether TILA requires disclosure of the existence and impact of an acceleration clause in a retail installment contract should have been settled early in TILA's life. Instead, the Federal Reserve Board has issued conflicting signals, and the Circuits are in disarray. The common denominators of the Board's analysis and the basis of the four divergent views of the courts are 15 U.S.C. § 1639(a)(7) (TILA § 129(a)(7)) and 12 C.F.R. § 226.8(b)(4), Regulation Z, implementing TILA. Section 1639(a)(7) provides:

"(a) Any creditor making a consumer loan . . . shall disclose each of the following items, to the extent applicable:

.        .        .        .        .

(7) The default, delinquency or similar charges payable in the event of late payments."

Section 226.8(b), in pertinent part, states:

"(b) In any transaction subject to this section, the following items, as applicable, shall be disclosed:

.        .        .        .        .

(4) The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments."

Judicial responses to the impact of Section 226.8(b)(4) on disclosure of acceleration have split four ways. One response is that disclosure is always required because the right of acceleration is itself a "charge . . . in the event of late payments," within the meaning of TILA and Regulation Z. (*Garza v. Chicago Health Clubs, Inc.* (N.D.Ill. 1972) 347 F.Supp. 955.) After noting that neither TILA nor Regulation Z expressly defines "charge," *Garza* turned to state decisions and to Black's Law Dictionary to find the meaning of "charge." The court decided that "charge" was synonymous with "obligation," "claim," and "expenses," and it concluded:

"Considering these definitions and the purpose of the statute and regulation to inform consumers of credit costs and terms so they can effectively choose between sources of credit . . . it seems clear that the acceleration of the balance of the debt should be considered a 'charge' . . . ." (347 F.Supp. at 959.)

The "always" view enjoyed a spasm of popularity among district courts, at least until two of the better known district court decisions were overturned on appeal. (*Meyers v. Clearview Dodge Sales, Inc.* (E.D.La. 1974) 384 F.Supp. 722, *rev'd* (5th Cir. 1976) 539 F.2d 511, 519; *Johnson v. McCrackin-Sturman Ford, Inc.* (W.D.Pa.1974) 381 F.Supp. 153, *rev'd* (3d Cir. 1975), 527 F.2d 257.)

*Garza* has the virtue of providing a uniform national rule which is consistent with

the remedial intent of TILA. (*See Mourning v. Family Publications Service, Inc.* (1973) 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318; *Sellers v. Wollman* (5th Cir. 1975) 510 F.2d 119, 122; *Eby v. Reb Realty, Inc.* (9th Cir. 1974) 495 F.2d 646, 650.) The defect in *Garza* is that equating an acceleration right with the term "charge" is not consistent with the use of "charge" in the context of TILA or in Regulation Z. Thus, Section 1639(a)(7) speaks of "default, delinquency, or similar charges payable," which suggests that "charges" were intended to refer to specific monetary sums rather than an undifferentiated notion of "burden" or "obligation." (*See Johnson v. McCrackin-Sturman Ford, Inc., supra,* 527 F.2d at 266.) Similarly, Regulation Z requires the disclosure of "the amount, or method of computing the amount," of the charges payable in the event of late payment, strongly implying that charges are sums of money, and not the right to payment or to increase the annual percentage rate. Moreover, the Federal Reserve Board's official staff interpretation of TILA and Regulation Z is directly contrary to *Garza*. "[T]he mere right to accelerate contained in a contractual provision . . . is not a *charge* payable in the event of late payment." (Emphasis in original. No. FC–0054 (March 21, 1977) 5 CCH Consumer Credit Guide ¶ 31,552.) Although we are not bound by the Board's official interpretation of Regulation Z nor by a staff opinion letter, both are entitled to respect; we should follow the Board's construction "unless there are compelling indications that it is wrong." (*Moore v. Great Western Savings & Loan Ass'n* (9th Cir. 1975) 513 F.2d 688, 690.) No compelling indications of error are present.

The polar opposite of *Garza* is the view that disclosure is never required. The Fifth and Tenth Circuits have adopted the "never" view. (*Begay v. Ziems Motor Co.* (10th Cir. 1977) 550 F.2d 1244; *Martin v. Commercial Securities Co., Inc.* (5th Cir. 1976) 539 F.2d 521.)[1] These courts reasoned that Congress must not have intended to require disclosure of acceleration clauses because it said nothing expressly about them. Congressional silence about provisions as common as acceleration clauses spoke eloquently to these Circuits to evidence Congress' intent not to include them as disclosure subjects.

Congressional silence is a dubious indicium of legislative intent, especially when we are dealing with a statute like TILA, in which Congress traced very few lines on a new large canvass. Despite the lack of articulate draftsmanship, TILA manifests Congress' overriding interest in disclosure to provide consumer protection. As the Supreme Court observed in *Mourning*:

"The hearings held by Congress reflect the difficulty of the task it sought to accomplish. Whatever legislation was passed had to deal not only with the myriad forms in which credit transactions then occurred, but also with those which would be devised in the future. To accomplish its desired objective, Congress determined to lay the structure of the Act broadly . . . ." (411 U.S. at 365, 93 S.Ct. at 1658.)

The Court explained that "[t]he Truth in Lending Act reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose.' By erecting a barrier between the seller and the prospective purchaser in the form of hard facts, Congress expressly sought 'to . . . avoid the uninformed use of credit.' 15 U.S.C. § 1601." (411 U.S. at 377, 93 S.Ct. at 1664.)

Other courts have adopted the view that disclosure of an acceleration clause is required under some circumstances. The leading proponent of the "sometimes" interpretation is the Third Circuit. The pivot of the intermediate interpretation, as in *Gar-*

---

[1]. The Fifth Circuit may be in transition because rehearing *en banc* has been ordered in *McDaniel v. Fulton National Bank of Atlanta* (5th Cir. 1976), 543 F.2d 568, in which the "never" view was reaffirmed. The *en banc* decision has not yet come down.

For further criticism of the "charge" theory, see Comment, *Acceleration Clause Disclosure Under the Truth in Lending Act,* 77 Colum.L. Rev. 649 (1977).

za, is the "charge" concept, but the existence of a "charge" depends upon whether the creditor retains or rebates unearned interest after acceleration. The Third Circuit holds that retained interest is a "charge," the existence of which must be disclosed, unless, under state law, the retained interest must be rebated upon acceleration. (*Johnson v. McCrackin-Sturman Ford Inc.* (3d Cir. 1975) 527 F.2d 257.)

A variation of the "sometimes" theme is that disclosure is required if the credit agreement itself fails to provide for rebating unearned interest. That interpretation was initially accepted by a few district courts in the Fifth Circuit, until the Court of Appeals reversed. (*Barrett v. Vernie Jones Ford, Inc.* (N.D.Ga.1975) 395 F.Supp. 904, 908–11, *rev'd* (5th Cir. 1976) 543 F.2d 568; *McDaniel v. Fulton National Bank of Atlanta* (N.D.Ga.1975) 395 F.Supp. 422, 425–28, *rev'd* (5th Cir. 1976) 543 F.2d 568; *see also* Galie, *The Acceleration Clause as a Truth in Lending Disclosure: The End of the Dilemma?*, 93 Banking L.J. 317 (1976).)

The "sometimes" interpretation does not run aground upon the textual shoal of *Garza,* nor upon the remedial difficulty with *Begay* and *Martin.* It is not satisfactory, however, because it is too narrow to be genuinely remedial; and it also conflicts with the Federal Reserve Board's interpretation of "charge." (*See* Staff Op'n Letter No. 1208 (July 6, 1977) 5 CCH Consumer Credit Guide ¶ 31,647.) The Third Circuit's addition of the state law element not only complicates the rule, but also builds into the statute and the regulation a morass of conflicting and uncertain state law. (*Compare*

*Williams v. Bill Watson Ford, Inc.* (E.D.La. 1976) 423 F.Supp. 345, 350–52 (Louisiana law always requires rebate upon acceleration) with *Burley v. Bastrop Loan Co., Inc.* (W.D.La.1976) 407 F.Supp. 773 (Louisiana law provides rebate subject to additional conditions); *compare McDaniel v. Fulton National Bank of Atlanta* (N.D.Ga.1975) 395 F.Supp. 422 (Georgia law always requires rebate) *with id.* at 424–28 (supplemental opinion) and *Barrett v. Vernie Jones Ford, Inc.* (N.D.Ga.1975) 395 F.Supp. 904 (Georgia law only provides rebates where accelerated payment of finance charges results in a rate of interest in violation of state usury law). *See also Ecenrode v. Household Finance Co. of South Dover* (D.Del.1976) 422 F.Supp. 1327, 1331–32 (Delaware law unclear).) The end product of the Third Circuit's interpretation is the disclosure of rebate confusion.[2] The result cannot be squared with congressional intent to require creditors to make meaningful disclosures to consumer debtors. (*See Ljepava v. M.L.S.C. Properties, Inc.* (9th Cir. 1975) 511 F.2d 935, 942; *Ecenrode v. Household Finance Co. of South Dover, supra,* 422 F.Supp. at 1331.)

The Federal Reserve Board has not resolved these conflicts; indeed, the Board has injected its own uncertainties. The Board signalled a promising beginning in October, 1974, with a Staff Opinion Letter that suggested a shift from the "charge" analysis to the "prepayment" provisions of 12 C.F.R. § 226.8(b)(7):[3]

"For the purposes of Truth in Lending disclosures, the staff views an acceleration of payments as essentially a prepayment of the contract obligation. As such,

---

**2.** *E. g., Burley v. Bastrop Loan Co., Inc., supra,* 407 F.Supp. at 781. A state may obligate "the accelerating creditor to rebate the unearned interest . . . [but] this rebate is conditioned upon his filing suit to collect the obligation; the creditor has the *power,* but not the *right* to collect interest as yet unearned on the obligation." (Emphasis in original.) *See also* Galie, *supra,* 93 Banking L.J. at 332–33.

**3.** 12 C.F.R. § 226.8(b)(7) provides:
"In any transaction subject to this section the following items, as applicable, shall be disclosed:

. . . . . .

(7) Identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to an obligation or refunded to the customer. If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed."

the disclosure provisions of § 226.8(b)(7) of the Regulation, which require the creditor to identify the method of rebating any unearned portion of the finance charge or to disclose that no rebate would be made apply. If the creditor rebates under one method for acceleration and another for voluntary prepayment, both methods would need to be identified under § 226.8(b)(7). Failure to disclose the method of rebate or nonrebate would be a violation of the Truth in Lending Act."

In the next paragraph of the letter, however, the staff returned to the "charge" analysis which had occupied the attention of the courts:

"[I]f upon acceleration of the unpaid remainder of the total payments, the creditor does not rebate unearned finance charges in accordance with the rebate provisions disclosed in § 226.8(b)(7), any amounts retained beyond those which would have been rebated under the disclosed rebate provisions represent a 'charge' which should have been disclosed under § 226.8(b)(4)."

(Staff Op'n Letter No. 851 (Oct. 22, 1974), 5 CCH Consumer Credit Guide ¶ 31,173.) A later interpretation repeats the "prepayment" analysis, begun by Letter No. 851, but it does not pursue the implications of the prepayment analysis. (Staff interpretation No. FC–0054, March 21, 1977, 5 CCH Consumer Credit Guide ¶ 31,552 ("[E]arly payment of the balance . . . upon acceleration by the creditor is essentially the same as a prepayment of the obligation.")

We think that the prepayment concept is the correct analytical track. The prepayment concept is not without its own problems, but the difficulties are considerably less than those that have been encountered with the "charge" theories. The prepayment concept leads directly to the conclusion that the effect of the acceleration clause on unearned interest must be "meaningfully disclosed in the disclosure statement," a result which is consistent both with the overriding purposes of Congress in enacting TILA and with the conclusions that we reached in *La Grone v. Johnson* (9th Cir. 1976), 534 F.2d 1360.[4] The prepayment theory also reaches the *Garza* result without the textual difficulties that *Garza* encounters with the "charge" language. We perceive no serious textual impediment to reading Section 226.8(b)(7) prepayment to include involuntary prepayment (acceleration) as well as voluntary prepayment.[5] Like voluntary prepayment, acceleration occurs during the life of the loan, upon the unilateral act of one of the parties, and both forms of prepayment cause payment of the contractual indebtedness before the ultimate time fixed by the agreement. In both voluntary and involuntary prepayment, the question arises whether the debtor is entitled to a rebate of the unearned finance charges. To be sure, voluntary payment is initiated by the debtor and acceleration by the creditor, but the same problem of unearned finance charges arises in either case. The potential impact on the debtor's pocketbook is the same.

We are required to respect the Board's construction of the statute and its own regulation, but less respect is due where, as here, the Board's views have been expressed only through unofficial staff statements rather than official interpretations. Moreover, when the Board has issued conflicting signals, we will choose the direction that

---

**4.** In *La Grone,* we affirmed the district court's decision that the debtor was entitled to rescind a credit transaction because the creditor had failed to disclose an acceleration clause in the disclosure statement. We assumed, without discussion, that disclosure was required. The issue that was litigated was whether disclosure in the underlying note, rather than in the specially marked disclosure section, satisfied TILA. We held that disclosure in the note did not comply with TILA. *See also Clausen v.*

*Beneficial Finance Co. of Berkeley* (N.D.Cal. 1976), 423 F.Supp. 985, 986, following *La Grone.*

**5.** We are aware that the Fifth and Tenth Circuits have criticized the use of the prepayment concept under § 226.8(b)(7) as also being unsupported by the precise language of the Regulation and the Act. *Begay v. Ziems Motor Co., supra,* 550 F.2d at 1249; *Martin v. Commercial Securities Co., Inc., supra,* 539 F.2d at 529.

makes more sense to us in trying to achieve the congressional purpose of providing meaningful disclosure to the debtor about the costs of his borrowing.[6] As we have pointed out, the charge theory, while superficially plausible, leads to confusion, and, when state law is incorporated in the "charge," the debtor is given an all points bulletin.

When we choose the Board's alternative prepayment theory, we cut a clean path through the thicket. Regulation Z, Section 226.8(b)(7), requires "[i]dentification of the method of computing any unearned portion of the finance charge in the event of prepayment in full . . . . If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed." When we equate acceleration with prepayment, the disclosure obligation under Section 226.8(b)(7) is evident: The creditor must disclose whether a rebate of unearned interest will be made upon acceleration and also disclose the method by which the amount of unearned interest will be computed if the debt is accelerated.

The Bank of Hawaii did not make the disclosures that we hold are required under Section 226.8(b)(7).[7]

REVERSED.

---

**6.** The weight accorded the informal letters of the staff of the Federal Reserve Board " 'in a particular case will depend on the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' " *Eby v. Reb Realty, Inc.* (9th Cir. 1974), 495 F.2d 646, 649–50 n.5, *quoting Skidmore v. Swift & Co.* (1944), 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124.

**7.** The failure to disclose the existence of an acceleration clause was only one of several violations of TILA alleged by plaintiff. Since multiple failures to disclose in any single credit sale transaction give rise to only one recovery (15 U.S.C. § 1640(g)) our resolution of the acceleration clause issue obviates the need to consider St. Germain's other claims.