John Mason KESSLER, Plaintiff-Appellant,

v.

ASSOCIATES FINANCIAL SERVICES COMPANY, Defendant-Appellee.

Nos. 76–1064, 76–1307.

United States Court of Appeals, Ninth Circuit.

Dec. 30, 1977.

John H. Paer, Richard S. Kanter and Linda Mei Leong (argued), of Legal Aid Society of Hawaii, Honolulu, Hawaii, for appellant, cross-appellee.

James M. Sattler (argued), Honolulu, Hawaii, for appellee, cross-appellant.

Before ELY, HUFSTEDLER, and WRIGHT, Circuit Judges.

HUFSTEDLER, Circuit Judge:

This case is a companion of *St. Germain v. Bank of Hawaii* (9th Cir. 1977) 573 F.2d 572, and, like *St. Germain*, it raises the question whether the Truth in Lending Act ("TILA," 15 U.S.C. §§ 1601 *et seq.*) and Regulation Z (12 C.F.R. §§ 226.1 *et seq.*) require the disclosure statement to reveal the consequences upon unearned finance charges of the creditor's exercise of its right to accelerate the debt upon default or late payment. The district court concluded that disclosure was required, based on a rationale different from ours in *St. Germain*.[1] Nevertheless, the court granted summary judgment in favor of the creditor because it thought that the creditor's reasonable misinterpretation of the statute and its good faith was a defense to the action, and because it believed that it could insulate the creditor from the consequences of the court's construction of the statute and the regulation by holding that its construction of the law was prospective only. We reverse.

Kessler entered a loan transaction with Associates Financial Services Co. of Hawaii, Inc. ("Associates") on May 29, 1975, in connection with an automobile purchase. The disclosure statement shows that Associates paid to third persons on Kessler's behalf $1,715.95. Including finance charges, insurance charges, and other miscellaneous charges, Kessler thus obligated himself to pay Associates $2,664.00.

Kessler executed a promissory note to Associates which contained an acceleration clause, similar to the clause in *St. Germain*. As in *St. Germain*, the disclosure statement did not reveal the creditor's right to accelerate the debt, nor did it disclose the consequences of acceleration upon the unearned finance charges.

Kessler brought this action under TILA and Regulation Z, claiming that the nondisclosure violated the statute and the regulation, for which he claimed statutory damages in the sum of twice the amount of the finance charge, but not less than $100.00, nor more than $1,000.00, together with reasonable attorney's fees and costs. Both parties moved for summary judgment. Although the district court held that Associates violated TILA, it entered summary judgment for Associates because the court thought that imposition of liability would be unfair to the creditor under the circumstances.

We share the district court's concerns that the vagaries of the construction of TILA and Regulation Z can be traps for even wary lenders and that the end product of requiring more and more revelations in disclosure statements can ultimately defeat the informative purposes that Congress had in mind because the disclosure statements will become as complex, unreadable, and often as unread as the underlying contracts. As real as those concerns are, however, redress lies with Congress and the Federal Reserve Board, not with the courts.

Congress confined the good faith compliance defense to those creditors who acted or

---

1. The district court's opinion is reported. *Kessler v. Associates Financial Services Co. of Hawaii, Inc.* (D.Hawaii) 1975) 405 F.Supp. 122.

failed to act in good faith reliance upon "any rule, regulation or interpretation" formally adopted by the Federal Reserve Board, which thereafter was rescinded by the Board or invalidated judicially. (15 U.S.C. § 1640(f). *See Pennino v. Morris Kirschman & Co., Inc.* (5th Cir. 1976) 526 F.2d 367; *Ives v. W. T. Grant Co.* (2d Cir. 1975) 522 F.2d 749.) The sole rule or regulation involved is Regulation Z itself. The Board has not formally interpreted Regulation Z to Associates' detriment, and we have not invalidated any part of Regulation Z. All that has happened is that we have resolved an ambiguity in Regulation Z in the light of TILA's purposes. Section 1640(f) creates no good faith defense based on the creditor's honest and reasonable, but mistaken interpretation of Regulation Z.

The district court's declaration that its interpretation of TILA and Regulation Z would be prospective only is a nullity. The application of doctrines limiting the retroactivity of judicial decisions is restricted to appellate courts. These doctrines have been developed to create some flexibility in controlling the impact of *stare decisis* (*Chevron Oil Co. v. Huson* (1971) 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296; *Linkletter v. Walker* (1965) 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601; Mishkin, Foreword, The Supreme Court 1964 Term (1965) 79 Harv.L. Rev. 56; Schaefer, "The Control of 'Sunbursts': Techniques of Prospective Overruling" (1967) 42 N.Y.U.L.Rev. 631.)[2] Decisions of district courts may persuade other courts by the force of the supporting rationale, but they are not binding in any other case, even before the same judge who rendered the decision, nor upon any other court. (*E. g.*, H. Black (1912) "The Law of Judicial Precedents" 10 *et seq.*)[3]

The district court's statement that it would apply the law prospectively only is thus based on a misapprehension of judicial process. The functions of the district court do not encompass making pronouncements on future law of precedential value. In fact, what the district court did was to refuse to apply the law as the court found it to the case before it. The district court is not empowered to make that choice.

REVERSED.

---

**2.** Doctrines that loosen the bounds of the general rule that all judicial decisions are fully retrospective have been subject to severe criticism, even when applied by courts of last resort. (*E. g., James v. United States* (1961) 366 U.S. 213, 222, 81 S.Ct. 1052, 6 L.Ed.2d 246 (Black, J., dissenting); *Desist v. United States*

(1969) 394 U.S. 244, 256, 89 S.Ct. 1030, 22 L.Ed.2d 248 (Harlan, J., dissenting); Mishkin, *op. cit. supra*, 79 Harv.L.Rev. at 58–70.)

**3.** In this context, we are not at all concerned with the law of judgments, *res judicata*, law of the case, or comity.