Donald J. CROYSDALE and Martha J. Croysdale, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,

v.

FRANKLIN SAVINGS ASSOCIATION, Defendant-Appellee.

No. 78-1364.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1979.

Decided July 12, 1979.

Rehearing and Rehearing En Banc Denied Aug. 27, 1979.

Robert C. Smith, Washington, D. C., for plaintiffs-appellants.

Christ T. Troupis, Mendota, Ill., for defendant-appellee.

Before PELL and TONE, Circuit Judges, and .KIRKLAND, Senior District Judge.*

PELL, Circuit Judge.

The plaintiffs, Donald and Martha Croysdale, brought this suit under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226.1 *et*

* Judge Alfred Y. Kirkland of the Northern District of Illinois sat on this case at the time of oral argument by designation. On May 1, 1979, Judge Kirkland became a senior district judge of the Northern District of Illinois and is continuing to sit on this case by redesignation.

*seq.* The subject matter of this action is the adequacy of the disclosures made by the defendant, Franklin Savings Association, in connection with a residential mortgage loan agreement. While the plaintiffs purport to challenge the nondisclosure of an acceleration clause in the event of the sale of the mortgaged property, the gravamen of their complaint is that there was no disclosure of the fact that the acceleration resulted in the creditor's retention of unearned finance charges. The district court, after hearing arguments upon essentially uncontested facts, dismissed the plaintiffs' complaint and entered judgment for the defendant. The plaintiffs appeal from that judgment.[1]

The plaintiffs purchased a home in Elmhurst, Illinois, in May 1976. To finance the purchase, they executed a note and mortgage with the defendant. The loan proceeds were distributed on May 21, 1976. The plaintiffs paid interest separately for the period from May 21, 1976, to June 1, 1976, apparently for the purpose of causing all of the financed payments to fall due on the first day of each month. Beginning on June 1, 1976, principal and interest were payable in equal monthly installments of $360.28 for a total of 348 monthly installments. The monthly payments were to be applied first to interest on the unpaid balance at the specified rate and then to the principal. The promissory note further provided that the interest for each month should be added to the unpaid balance as of the first day of the month at the rate of one-twelfth of the annual interest rate and should be calculated upon the unpaid balance as of the last day of the preceding month. The disclosure notice provided that there was no prepayment penalty and that if the monthly payment was received after the fifteenth of the month there would be an additional amount due of one-twelfth of one per cent of the unpaid balance. The disclosure statement also showed the amount being financed as the principal amount owing as of the first day of June 1976.

The plaintiffs did not make the monthly payment due on May 1, 1977, until May 13, 1977. On that same day the plaintiffs sold the mortgaged property. Pursuant to the due-on-sale clause in the note and mortgage, the entire principal balance became due at once. The plaintiffs paid the balance to obtain a release of the mortgage, the amount paid including the full amount owing on May 1st plus the unpaid balance of the principal. Although the balance was paid in full on the thirteenth of May, before the end of the month, the defendant did not refund any part of the monthly payment due at the beginning of the month.

The plaintiffs argue that because of the due-on-sale clause they had to pay interest for the entire month although they had the use of the defendant's money for only thirteen days. The TILA disclosure statement mentioned neither the due-on-sale clause nor its possible effects. As previously noted, the principal issue in this appeal is whether the failure to disclose the effects of the due-on-sale clause violated TILA or Regulation Z. The plaintiffs also argue that the disclosure statement was misleading because it created the impression that interest would be computed on a per diem basis when the loan was outstanding for less than the entire month.

The plaintiffs initially argue that the due-on-sale clause being an acceleration clause, there should have been notification of this fact in the Regulation Z disclosure notice. We have been cited numerous cases reflecting the divergent views taken on the necessity of disclosure of an acceleration clause, such views ranging from "never," through "sometimes," to "always." See for a discussion of the various views, *St. Germain v. Bank of Hawaii*, 573 F.2d 572 (9th Cir. 1977). TILA and Regulation Z make no specific provision for disclosure of the right of acceleration and an examination of the cases cited reveals that the question has ordinarily been treated, not because of any real belief that it per se is required to be

---

1. The plaintiffs brought this action on behalf of themselves and persons similarly situated. The district court, however, did not certify the suit as a class action, and no notice has been sent to any prospective class members of any action taken in this suit.

disclosed but because of its impact upon the cost or terms of financing. To the extent that an occasional case may have adopted a per se rule we reject, as did the district court in the present case, such a view. Indeed, the plaintiffs do not seem to disagree that the crucial aspect of requiring disclosure of an acceleration clause is when there is some impact upon financing costs. In their brief, they observe, "It makes sense to require disclosure of acceleration rights when the exercise of such rights has measurable financial repercussions for the borrower." We do not necessarily disagree with the underlying thought but point out that in plaintiffs' proposed situation, if any aspect of the transaction is subject to disclosure, it would be the particular repercussion of the acceleration and not the acceleration itself.[2]

For our present purposes we will assume that the due-on-sale clause is an acceleration clause, and hold that there is no duty of disclosure of an acceleration clause under TILA or Regulation Z unless it has some bearing on the cost or terms of financing as provided in the statute and accompanying regulation. The plaintiffs contend that the failure to rebate what they call unearned interest does have such a bearing so we turn to the question of whether there was a duty to notify that if there was an acceleration by virtue of sale of the mortgaged property and the payoff occurred during the course of the month, there would be no refund of the interest included in the monthly payment paid or payable at the beginning of the month.[3]

Although relying generally upon a claimed violation of TILA, the plaintiffs specifically base their argument on three subsections of Regulation Z, 12 C.F.R. § 226.8(b)(4), (6), and (7). An examination of these three subsections, which will be discussed as to applicability separately hereinafter, would seem to indicate that if any one is found applicable and controlling the other two would not be. Nevertheless, inasmuch as the plaintiffs are apparently willing to rely upon any one of the three which will produce a reversal, we will discuss all three.

■ Regulation Z, 12 C.F.R. § 226.8(b)(4), provides for disclosure of:

> The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.

As we have already mentioned, the Regulation Z disclosure notice here did specify the charge that would be made if the monthly payment was late, i. e., after the fifteenth of the month. In referring to subsection (4), the plaintiffs construe it as requiring disclosure "of late payment charges and other default charges," apparently attempting to bring their case within its ambit on the basis that the defendant in its loan instruments characterized the sale of the mortgaged property as a default. Such a construction, however, violates the plain meaning and intended scope of subsection (4). We have previously referred to the discussion in *St. Germain* of the incorrect reading of the subsection contained in *Garza*, and the *St. Germain* analysis is applicable here. In our reading of subsection (4) we find no basis for thinking that the required disclosure included any "other default" charge than one which is "payable in the event of late payments." The words

2. In *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955 (N.D.Ill.1972), the court appears to have adopted a per se rule. The court there relied upon 12 C.F.R. § 226.8(b)(4) which requires the disclosure of "charges payable in the event of late payments." We agree with the rejecting analysis of *Garza* by the Ninth Circuit in *St. Germain*, and the impropriety of equating an acceleration right with the term "charge" in the context of TILA or Regulation Z. *See* 573 F.2d at 574.

3. We do note, but do not consider it necessary to consider in reaching the decision we do in this case, that some of the equities do not weigh heavily on the side of the plaintiffs. While their payment was due on the first of the month, they did not pay that payment until May 13; thus they had the use of the amount of the payment without interest for 13 days. Also, if they had waited three more days for closing there would have been a late payment penalty of one-twelfth of one per cent of the unpaid balance, which matter was properly shown in the Regulation Z disclosure notice.

"default," "delinquency," and "similar" each modify "charges," and the charges in turn are those payable in the event of late payments. We find no indication that the plaintiffs are audaciously claiming that they are within the ambit of the subsection by virtue of having made the May payment thirteen days late. In any event there was no separate charge in the loan instruments for such a late payment, such an additional charge not being provided for until the payment was more than fifteen days late. We hold, therefore, that the defendant did not have to make a disclosure pursuant to subsection 226.8(b)(4).

■ Regulation Z, 12 C.F.R. § 226.-8(b)(6), provides for disclosure of:

A description of any penalty charge that may be imposed by the creditor or his assignee for prepayment of the principal of the obligation (such as a real estate mortgage) with an explanation of the method of computation of such penalty and the conditions under which it may be imposed.

The plaintiffs paid interest which would have entitled them to the use of the principal for the entire month, but only had that use for thirteen days. Under Illinois substantive law, as will be noted hereinafter, the plaintiffs contractually agreed to buy and pay for the use of the money a month at a time on a declining interest basis equated with the amount of principal actually owed as of the end of the previous month. Certainly on a theoretical cost accounting basis the prepayment resulted in a cost to the plaintiffs, but it is nevertheless quite clear that the cost was not a penalty within the meaning of subsection 226.-8(b)(6):

Section 226.8(b)(6) relates only to charges assessed in connection with obligations which do not involve precomputed finance charges included in the obligation. It applies to transactions in which the finance charge is computed from time to time by application of a rate to the unpaid principal balance. Prepayment penalties which require disclosure under this section (which principally arise in connection with prepayment of real estate mortgages) occur when the obligor in such a transaction is *required to pay separately an additional amount* for paying all or part of the obligation before maturity. . . .

12 C.F.R. § 226.818(b) (Emphasis added). The quoted portion of this Official Board Interpretation of subsection 226.8(b)(6) of Regulation Z[4] makes it quite clear that the subsection relates only to a penalty which is required to be paid separately and that the amount of the penalty is additional to that which would be due in the absence of prepayment. Here the plaintiffs made no separate payment nor were they required by the loan instruments to do so. They complain rather of the failure of the defendant to refund part of a normal monthly payment. The part of the payment they complain of was due and payable under the normal operation of the loan agreement.[5] Concluding that the due-on-sale clause did not result in a penalty in the sense that the word was used in Regulation Z, we hold

---

**4.** Regulation Z, 12 C.F.R. § 226.1(d)(4), authorizes the issuance by the Federal Reserve Board (FRB) of Official Board Interpretations upon requests that raise potentially controversial issues of general applicability dealing with substantial ambiguities in the Regulation. These interpretations appear at 12 C.F.R. § 226.201 *et seq.* These interpretations by the FRB of its own Regulation are entitled to great deference because of the important interpretive powers granted to the agency in this very complex field under 15 U.S.C. § 1604. *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971, 976–77 (5th Cir. 1974).

**5.** In support of their penalty theory of recovery, the plaintiffs cite *Bartlett v. Commercial Feder-*

*al Savings & Loan Ass'n*, 433 F.Supp. 284 (D.Neb.1977). *Bartlett* applied 226.8(b)(6) to an acceleration provision in a real estate mortgage agreement. We do not read *Bartlett* as supporting a different result than the one we reach. In *Bartlett*, the defendant, unlike the defendant here, had the right to assess a separate 1% penalty in the event of sale of the mortgaged property, and the court held the disclosure of this penalty adequate under § 226.8(b)(6). In the case before us, the printed note form did contain a prepayment penalty but this had been stricken and the words "NO PREPAYMENT PENALTY" had been typed next to the stricken portion.

that the defendant did not have to make a disclosure pursuant to subsection 226.-8(b)(6).

The plaintiffs also argue that the prepayment of the obligation resulted in the collection by the defendant of unearned finance charges and that the nondisclosure of this effect of the due-on-sale clause violated subsection 226.8(b)(7) of Regulation Z, which requires:

Identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full of an obligation which includes precomputed finance charges and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to an obligation or refunded to the customer. If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed.

As we noted in our discussion of the prepayment penalty theory of recovery, the plaintiffs may in theory have incurred a cost in an accounting sense as the result of the due-on-sale clause. We conclude, however, that the prepayment did not result in the collection of "unearned finance charges" within the meaning of subsection 226.-8(b)(7), and that the rebate disclosure requirements of this section have no applicability here. In fact, it is fairly clear that this subsection was not intended to apply at all to obligations of this nature.

It affirmatively appears from the portion of the FRB interpretation quoted in the text, *supra*, that subsection 226.8(b)(6) was intended to apply to obligations like the present one if the loan documents provided for a prepayment penalty charge. The interest charge of this mortgage obligation was computed periodically on the basis of the outstanding balance, and the face amount due on prepayment does not include a finance charge calculated for the life of the obligation. In contrast, subsection 226.-8(b)(7) applies to an altogether different type of obligation. The language of subsection 226.8(b)(7) refers to "the event of prepayment of an obligation which includes precomputed finance charges." The FRB interpretation contrasts subsection 226.-8(b)(7) with subsection 226.8(b)(6) in this way:

. . . On the other hand, § 226.8(b)(7) is designed to encompass the disclosures necessary with regard to the prepayment of an obligation involving precomputed finance charges which are included in the face amount of the obligation.

12 C.F.R. § 226.818(b).

Although the FRB does not explain the different scope of subsection 226.8(b)(7), its reasoning is apparent: the FRB has determined that the periodic interest computation and payment characteristic of obligations like this one is a permissible method of determining the interest component of the earned finance charge. Consequently the payment of interest at the time it becomes due under the contract when that payment amount is based on the principal amount then due will generally not result in the collection of unearned finance charges when the obligation is prepaid in full.

On the other hand, the prepayment of an obligation that includes a precomputed finance charge as part of the face amount, the type of obligation covered by subsection 226.8(b)(7), results in payment of interest for the entire term of the obligation. Prepayment of this form of obligation thus would result in payment of an unearned finance charge. Frequently in this situation the practice is to give the debtor a rebate of unearned interest so that the finance charge reflects the actual term and amount of the loan.

In contrast to precomputed obligations, obligations like the mortgage loan in this case calculate interest periodically, often for a short term, on the basis of the unpaid balance of the debt. The finance charge collected thus at all times reflects the amount actually earned. On prepayment, only the remaining unpaid principal is collected. The plaintiffs' argument is thus reduced to an assertion that the monthly computation of interest did not precisely reflect the length of time they had the loan. Had the interest been computed on a daily

basis, for example, prepayment would not have had the same effect it had here. In any event, it is clear that subsection 226.-8(b)(7) has no applicability to the present transaction and we so hold.

Nevertheless, we do find some guidance in the Official Board Interpretation pertaining to subsections (6) and (7) on how the Board would consider a transaction such as the present one. Thus, in 12 C.F.R. § 226.-818(b), it is stated:

> . . . although in a precomputed obligation the finance charge rebate to a customer may be less when calculated according to the "Rule of 78's," "sum of the digits," or other method than if calculated by the actuarial method, such difference does not constitute a penalty charge for prepayment that must be described pursuant to § 226.8(b)(6).

*See also* Comment, *Acceleration Clause Disclosure Under the Truth in Lending Act*, 77 Colum.L.Rev. 649, 654–55 nn. 38 & 39 (1977), and *Bone v. Hibernia Bank*, 493 F.2d 135, 137, 140–41 (9th Cir. 1974).

Thus, just as in the case of figuring a rebate by different methods, some of which result in a lesser return and a correspondingly higher cost to the borrower, in which case the FRB does not consider this difference, a penalty charge pursuant to subsection 226.8(b)(6), in the present case there would similarly be no basis for a finding of the applicability of that subsection.

Further, in connection with identification of rebate methods used on precomputed contracts, 12 C.F.R. § 226.818(c) states:

> Section 226.8(b)(7) requires "identification" of the rebate method used on precomputed contracts. Many State statutes provide for rebates of unearned finance charges under methods known as the "Rule of 78's" or "sum of the digits" or other methods. In view of the fact that such statutory provisions involve complex mathematical descriptions which generally cannot be condensed into simple accu-

rate statements, and which if repeated at length on disclosure forms could detract from other important disclosures, the requirement of rebate "identification" is satisfied simply by reference by name to the "Rule of 78's" or other method, as applicable.

In situations such as the present one, the degree of imprecision resulting from monthly computation will vary according to the time of prepayment. If the plaintiffs had sold their house and closed on the last day of the month there would have been no effect whatsoever. Similarly, in the case of precomputed contracts, the discrepancy in earned finance charge computations under the Rule of 78's and the actuarial method also varies according to the circumstances. The FRB has not required disclosure of this possibility in precomputed contracts, which are clearly subject to the disclosure rule of subsection 226.8(b)(7), and we cannot read that subsection or subsection (6) to imply such a disclosure requirement in contracts like this one. The apparent intent of the subsection is to defer to the definition in the contract of "earned" and "unearned" finance charges.

■ As set forth in 12 C.F.R. § 226.-818(c), *supra*,[6] one of the many factors considered by the FRB in fashioning disclosure requirements is whether a particular subject of disclosure will increase understanding of credit costs or merely cause confusion. For this reason we hesitate to hold a fairly complex explanation to be a requirement of the TILA or Regulation Z without some express direction from the FRB. Only the FRB has such broad power to classify transactions for the purpose of disclosure. 15 U.S.C. § 1604. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). This court is not empowered to require disclosure simply because it may deem disclosure desirable. *Griffith v. Superior Ford*, 577 F.2d 455, 458 (8th Cir. 1978).

---

**6.** We are inclined to agree with the Ninth Circuit in *Bone*, 493 F.2d at 140 n.4, that there would be doubt as to whether a reference to the method of computation of the rebate, *e. g.*, "Rule of 78's," without more would spark any substantial degree of recognition on the part of credit consumers. Nevertheless, in that situation, which is analogous to the present one, that is all that the FRB requires.

Nothing in the TILA itself, as we read it, requires the claimed disclosure in the present case and for that reason we have examined the more expansive provisions of Regulation Z. Having done so, it appears clear that none of the subsections of that regulation relied upon by the plaintiffs are applicable to this transaction. Nor do we think that this situation is one which is within the remedial purpose of the TILA, or that it was overlooked by the FRB. In its final analysis, the plaintiffs' claim is that for a part of a month they were paying for the use of money which they did not get and that this possibility should have been disclosed to them. Putting the matter another way, the plaintiffs are saying that the interest was not earned. This approach ignores the fact that while interest is basically charged for the use of the lender's money it also includes factors of expenses incurred by the lender including those arising out of the process of administering and servicing the loan. Primarily the various factors go to setting the rate of interest but we see no reason that fixing a time each month for treating the interest as having been earned would not also be an appropriate factor bearing on the loan actually consummated.

Inasmuch as the plaintiffs' case does essentially hinge on the interest he paid being in part unearned, if in law it was properly considered to have been earned as of the first of each month, we cannot conceive that nondisclosure of the fact that it would have to be paid in full at any time during the month when the loan was paid off violated either TILA or Regulation Z, nor, what is certainly important, the Congressional intent to require creditors to make meaningful disclosures to consumer creditors. We hold that the interest was properly considered as earned.

Our conclusion in this respect is buttressed by Illinois substantive law. The Illinois courts have held that interest is earned in accordance with the contract between the parties. Ill.Rev.Stat. ch. 32, § 794. The defendant cites two cases, *Wishnoff v. Guardian Savings & Loan Association*, 34 Ill.App.3d 107, 339 N.E.2d 494 (1975), and *Goodman v. Advance Mortgage Corp.*, 34 Ill.App.3d 307, 339 N.E.2d 257 (1975), in which the Illinois courts held that interest in mortgage agreements virtually identical to this one was earned as of the first of the month when payment was due. Although we have involved here a federal statute, and do not conceive that Congress intended to "build into the statute a morass of conflicting and uncertain state law," *St. Germain, supra*, at 575, we have noted previously the deference shown to the choice of rebate computation method in precomputed contracts, a choice often dictated by state law. *See* 12 C.F.R. § 226.818(c), *supra*. Any additional cost arising from the use of the Rule of 78's to compute rebates is not subject to specific disclosure. In light of the FRB's deference to state rules of computation for precomputed obligations, we see no reason to depart from the state rule of computation for this type of obligation when the substantive law of the state where the transaction occurred does not subvert the purposes of the Act or Regulation.

Finally, on the duty of disclosure, again adverting to the FRB recognition of the difficulty in the rebate method situation of setting forth a complex mathematical description, we note the practical impossibility of attempting to be more specific than the defendant was in setting forth the mathematical consequences on the interest due at the first of the month if by subsequent act of the plaintiffs the entire amount of the note became due and payable. The mathematical consequences would vary as much as there were days in the month. Clearly here, in the disclosure statement, the plaintiffs were informed that principal and interest in the amount of $360.28 were due on the first of each month. By their subsequent act of selling, the plaintiffs would in effect contend that what was disclosed to them did not mean what it plainly said.

■ The plaintiffs also argue that the disclosure statement was misleading and in violation of 15 U.S.C. § 1631 because it showed that interest would be calculated from the date the proceeds were disbursed, May 21, 1976, to June 1, 1976, on a per diem basis. The plaintiffs argue that this disclo-

sure would lead them to expect per diem calculation of interest at the end of the loan period as well, because they only had the use of the money for a portion of the month. We disagree. The disclosure statement is unambiguous. Nowhere does the statement, or any of the loan documents say that interest will be calculated on a "per diem" basis. The disclosure statement sets forth as "Interest from 5/21 to 6/1" a charge of $119.13 and then says that principal and interest will be paid in 348 monthly installments beginning on June 1, 1976, and due on the first of each month thereafter. We do not see how disclosure of this initial interest payment, the purpose of which apparently was to make all other payments fall due on the first day of the month, could lead anyone to believe that exceptions would be made in the future.

For the above reasons, the judgment of the district court is affirmed.