**Harriet V. WILSON, Plaintiff,**

v.

**ALLIED LOANS, INC., Defendant.**

**Civ. A. No. 77–803.**

United States District Court,
D. South Carolina,
Columbia Division.

March 14, 1978.

Marshall T. Walsh, Gaines & Walsh, Spartanburg, S. C., for defendant.

## ORDER

CHAPMAN, District Judge.

Since Congress, in all of its wisdom, has determined that federal district courts should preside over consumer complaints against finance companies relating to technicalities in language used in loan documents in which the lofty sum of $100 is at issue, this Court must now proceed to wade through the morass of technical regulations issued by the Federal Reserve Board in an attempt to reach the merits of this case.

Defendant made two installment loans to the plaintiff in which she borrowed $167.24 to be repaid in seven monthly payments of $28. Defendant secured this loan by taking a security interest in a range and a set of bunk beds owned by plaintiff. In bringing this suit, plaintiff alleges that the forms used by defendant violated the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., and that she is entitled under that Act to a judgment in the sum of double the amount of the finance charge or $100,[1] whichever is greater, plus costs and attorney fees. 15 U.S.C. § 1640. This matter is presently before the Court on cross motions for summary judgment.

Plaintiff alleges that the disclosures made by defendant on the loan document violated the Act in three ways. First, plaintiff alleges that the defendant failed to disclose that it was taking a security interest in after acquired consumer goods. She bases this claim on 15 U.S.C. § 1639(a)(8) which states that a creditor must disclose

> a description of any security interest held or to be . . . acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

James S. Pope, Columbia, S. C., for plaintiff.

1. This Court has not heard a case where $100 was not the greater figure. The Act must have been drawn by lawyers for the benefit of lawyers, since the lawyers for both the lender and the borrower make much more out of these cases than do the plaintiffs.

Pursuant to 15 U.S.C. § 1604, the Federal Reserve Board promulgated the following regulations governing disclosure of security interests:

> 12 C.F.R. § 226.8(b)(5)—In any transaction subject to this section, the following items, as applicable, shall be disclosed: (5) A description or identification of the type of any security interest . . . acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates . . . . *If after-acquired property will be subject to the security interest . . . this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest . . . acquired.*
>
> 12 C.F.R. § 226.8(a)—All of the disclosures shall be made together on either (1) the note . . . on the same side of the page [as the creditors] signature; or (2) one side of a separate statement which identifies the transaction.

In this case, all information relating to each loan is contained on a single document. This document contains the full text of the note and the full disclosure of the loan terms on the front side. The text of the security agreement starts on the bottom of the front page and continues on the back. The document clearly discloses on the front page, in accordance with the statutes and regulations, that a security interest is acquired in certain property identified as a range and a set of bunk beds. The alleged defect in the form is the fact that terms on the reverse side[2] of the form extend the security interest to "all other goods of the same class now or hereafter acquired." Defendant argues in opposition to plaintiff's motion for summary judgment that no interest was acquired in after-acquired property because South Carolina law severely limits the effect of after-acquired property clauses with respect to consumer goods. S.C.Code Ann. § 36–9–204(4)(b) (1976) provides:

> No security interest attaches under an after-acquired property clause to consumer goods other than accessions when given as additional security unless the debtor acquires rights in them within ten days after the secured party gives value.

Defendant's argument would be correct but for the 10 day provision. If state law had totally invalidated after-acquired interests in consumer goods, the language on defendant's form would have had no effect and no disclosure of a security interest in after-acquired property would have been necessary because no such interest would have been "acquired." Unfortunately for the defendant, since it actually acquired a security interest in any appliances or furniture acquired by plaintiff within ten days of the loan date, it violated the regulations by failing to disclose this interest. *See Ecenrode v. Household Fin. Corp. of South Dover,* 422 F.Supp. 1327 (D.Del.1976). Since this violation is apparent from the face of the loan document, there is no factual issue and plaintiff is entitled to a summary judgment as to this claim.

Despite the fact that this Court feels compelled by the statutes and regulations to award the plaintiff the penalty established by the Truth in Lending Act, this result is absurd in light of the realities of this case. This barratrous legislation transforms loan documents into contest puzzles in which prizes are awarded to those who can uncover the technical defects. Unfortunately, these prizes are not paid by the sponsor of the contest, the government, but by finance companies who attempt to make a fair profit by loaning money while at the same time trying to insure that the loans will be repaid. They must necessarily use form documents which are sufficiently flexible to cover a wide variety of situations presented by both consumer and commercial loans. A penalty is imposed on the defendant in this case even though it has acted in good faith and despite the fact that plaintiff has sustained no damages. The violation in this case results from a minor

---

**2.** So much information is required to be printed on the face of the instrument that notes will soon be printed and rolled up as a Roman scroll.

technicality which arises from the operation of the 10 day rule relating to after-acquired security interests in consumer goods. The 10 day interest acquired was surely unwanted by the defendant, unimportant to the plaintiff, and unexpected by both parties. It gave no meaningful security to the defendant and its full disclosure to the plaintiff would undoubtedly have had no effect on plaintiff's decision to obtain the loan from the defendant.

■ Plaintiff's second complaint about defendant's form is that an initial charge was withheld from the proceeds of the credit extended but was not labeled with the term "prepaid finance charge" as required by the regulations. The general disclosure requirements are set forth in 15 U.S.C. § 1639 and the relevant requirements and defendant's compliance with them follow:

(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction . . . shall disclose each of the following items, to the extent applicable:

(1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account . . . . [Defendant disclosed this amount to be $154.63.]

(2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge. [Defendant disclosed itemized charges made for various types of credit insurance and documentary stamps which totaled $7.61.]

(3) The total amount to be financed (the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2)) [Defendant stated that the amount financed was $167.24.]

(4) . . . the amount of the finance charge. [The finance charge was stated to be $28.76.]

The manner and specificity of the disclosures required by § 1639 are outlined in 12 C.F.R. § 226.8. After a circuitous jumping between paragraphs and subparagraphs this regulation eventually establishes a requirement that any amount withheld by the creditor from the "credit extended" be labeled with the term "prepaid finance charge." The clarity of the explanation of this requirement is apparent without a need for comment from the following quotations from § 226.8:

(c) In the case of a credit sale, in addition to the items required to be disclosed under paragraph (b) of this section, the following items, as applicable, shall be disclosed:

(6) Any amounts required to be deducted under paragraph (e) of this section using, as applicable, the terms "prepaid finance charge" and "required deposit balance" and, if both are applicable, the total of such items using the term "total prepaid finance charge and required deposit balance."

(d) In the case of a loan or extension of credit which is not a credit sale, in addition to the items required to be disclosed under paragraph (b) of this section, the following items, as applicable, shall be disclosed:

(1) The amount of credit, excluding items set forth in paragraph (e) of this section, which will be paid to the customer or for his account or to another person on his behalf, including all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, using the term "amount financed."

(2) Any amount referred to in paragraph (e) of this section required to be excluded from the amount in subparagraph (1) of this paragraph, using, as applicable, the terms "prepaid finance charge" and "required deposit balance," and, if both are applicable, the total of such items using the term, "total prepaid finance charge and required deposit balance."

(e) The following amounts shall be disclosed and deducted in a credit sale in accordance with paragraph (c)(6) of this section, and in other extensions of credit shall be excluded from the amount disclosed under paragraph (d)(1) of this section, and shall be disclosed in accordance with paragraph (d)(2) of this section:

(1) Any finance charge paid separately, in cash or otherwise, directly or indirectly to the creditor or with the creditor's knowledge to another person, or withheld by the creditor from the proceeds of the credit extended.

As if this explanation of the "prepaid finance charge" requirement were not confusing enough, the Federal Reserve Board made matters worse by issuing the following "interpretation" of this requirement codified as 12 C.F.R. § 226.819:

(a) Section 226.8(c)(6), 226.8(d)(2) and 226.8(e)(1) require that certain finance charges be disclosed as "prepaid finance charges." They also require that such prepaid finance charges be excluded or deducted from the credit extended in arriving at the "amount financed." The question arises whether add-on, discount or other pre-computed finance charges which are reflected in the face amount of the debt instrument as part of the customer's obligation, but which are excluded from the "amount financed," must be labeled as "prepaid" finance charges.

(b) The concept of prepaid finance charges was adopted to insure that the "amount financed" reflected only that credit of which the customer had the actual use. Precomputed finance charges which are included in the face amount of the obligation are not the type contemplated by the "prepaid" finance charge disclosure concept. Although such precomputed finance charges are not to be included in the "amount financed," they need not be regarded as finance charges "paid separately" or "withheld by the creditor from the proceeds of the credit extended" within the meaning of § 226.-8(e) to require labeling "prepaid" under §§ 226.8(c)(6) and 226.8(d)(2). They are "finance charges", of course, to be disclosed under §§ 226.8(c)(8) and 226.-8(d)(3).[3]

This interpretation clarifies the concept of prepaid finance charges like mud clarifies water. The regulation and interpretation repeatedly use the phrase "credit extended" as a starting point for determining whether a charge is a "precomputed finance charge" or a "prepaid finance charge." The term "credit extended," however, is never defined by the regulations. Only the term "credit" is defined as. meaning "the right granted by a creditor to a customer to defer payment of debt, incur debt and defer its payment, or purchase property or services and defer payment therefor." 12 C.F.R. § 226.2(1). How is the lender to know whether a part of the finance charge is withheld from the "proceeds of the credit extended" unless he knows what the term "credit extended" means? In the instant case, if the credit extended is $196.00 (the total of the payments), then the $10.03 initial charge is withheld from the proceeds of the credit extended and it should have been labeled as a "prepaid finance charge." If, on the other hand, the credit extended is $167.24 (the amount financed), then the $10.03 initial charge was not withheld from the proceeds of the credit extended and no "prepaid finance charge" label was required. Since no definition of "credit extended" is contained in the regulations, this Court defines the term as it relates to this case to be synonymous with "amount financed". Accordingly, since the initial charge was not withheld from the amount financed, that initial charge was not required to be labeled as a "prepaid finance charge." Defendant, therefore, is entitled to a summary judgment as to this claim.

■ Plaintiff's third complaint is that the loan documents contained "information which is confusing, misleading and inconsistent with the Disclosure requirements of 12 C.F.R. § 226.6(c)." That section of the regulations provides that any additional information disclosed by the lender "[not] be stated, utilized, or placed so as to mislead or confuse the customer . . . ." Plaintiff contends that this regulation was violated by the disclosure of the $159.63 figure labeled on the form as "Net cash from chart." Plaintiff complains that the form gives "no explanation as to what these figures . .

---

**3.** Anyone capable of deciphering 12 C.F.R. 226.8 and its "interpretation" should be working as a cryptographer at the Pentagon and not for a bank or loan company.

represent nor is it indicated as to how this might be calculated." The Court does not understand why plaintiff is confused by the $159.63 figure. The form clearly shows that the amount financed is $167.24. Plaintiff could have accepted that amount in cash; however, she elected to purchase various credit insurance policies. These policies and the eight cents deducted for documentary stamps totaled $7.61 which, when deducted from the amount financed of $167.24, equals $159.63. It is quite clear that this figure results from the deduction of the insurance and stamps from the amount financed. Furthermore, there is nothing confusing or misleading about the label "net cash from chart." The form contains a chart showing, inter alia, the amount financed and the various insurance charges and the $159.63 net cash figure is clearly obtained from the figures on this "chart." There is no merit to plaintiff's complaint about this figure and the defendant is, accordingly, granted summary judgment on this issue.

IT IS, THEREFORE, ORDERED, in accordance with the foregoing discussion, that judgment be entered in favor of the plaintiff in the amount of $100 plus costs of this action plus a reasonable attorney fee of $150.00.

AND IT IS SO ORDERED.